**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Matthew LaGRONE, Defendant–
Appellant.**

**No. 93–3383.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 12, 1994.

Decided Dec. 28, 1994.

Andrew B. Baker, Jr., Asst. U.S. Atty., Office of U.S. Atty., Dyer, IN, Robert N. Trgovich (argued), Office of U.S. Atty., Fort Wayne, IN, for plaintiff-appellee.

F. Allen Tew, Jr. (argued), Indianapolis, IN, for defendant-appellant.

Before LAY,* EASTERBROOK, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Matthew LaGrone attacks his conviction of possession with intent to distribute crack cocaine in excess of five grams. He bases his attack on the ground that the court erroneously admitted certain incriminating evidence.

In late 1992, members of the Fort Wayne Police Department's Vice and Narcotics Division arrested LaGrone, pursuant to a warrant, in his grocery store, Matt's Market. Because the officers had received information that LaGrone might be armed, they entered the store with weapons drawn. Two members of the raid team wore skimasks to protect their identities because they often worked undercover. All members of the team wore jackets that clearly identified them as law enforcement officers. When the officers entered the store, LaGrone, his girlfriend and a few customers were present. The customers were searched and escorted out. LaGrone's girlfriend was also searched and remained in the store. LaGrone was handcuffed and informed of his *Miranda* rights. At this time, one of the officers briefly interrogated him. Later the officers asked LaGrone to consent to a search of his store. After unsuccessful attempts at contacting his attorney, LaGrone consented to the search, saying, "I know what you want. I'll show you where it's at." LaGrone also signed a consent to search form. LaGrone led the officers to an area behind the front counter, where they found crack cocaine. The officers then took him to the Fort Wayne police station, where, after being read his *Miranda* rights again and waiving them, he made an incriminating statement.

■ LaGrone first contends that the trial court should have suppressed the evidence acquired at the grocery store—the crack cocaine. He argues that he did not voluntarily sign the consent to search form. The district court concluded, after conducting a suppression hearing, that "LaGrone voluntarily signed the waiver of rights form." We will reverse a district court's determination that a defendant consented to a search only if it is clearly erroneous. *United States v. Kozinski*, 16 F.3d 795, 810 (7th Cir.1994). Moreover, as the district court had the opportunity to observe the witnesses, we give great deference to its credibility determinations. *Id.; see also United States v. Cardona–Rivera*, 904 F.2d 1149, 1152–53 (7th Cir.1990) (stating that district court's credibility assessments concerning motions to suppress are conclusive unless "contrary to a law of nature").

■ In *Schneckloth v. Bustamonte*, the Supreme Court stated: "the question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." 412 U.S. 218, 227, 93 S.Ct. 2041, 2047–48, 36 L.Ed.2d 854 (1973). This court considers a number of factors when

* The Honorable Donald P. Lay, Circuit Judge for the Eighth Circuit, sitting by designation.

determining whether a consent to search was voluntary: "age, education, and intelligence of the defendant; advisement of his rights; how long he was detained prior to the consent; repeated requests for consent; physical coercion; and whether he was in custody." *Kozinski,* 16 F.3d at 810; *see also Schneckloth,* 412 U.S. at 226, 93 S.Ct. at 2047. We are mindful that the Supreme Court has admonished that a determination of voluntariness does not ride on "the presence or absence of a single controlling factor," but that the court must make a "careful scrutiny of all the surrounding circumstances." *Schneckloth,* 412 U.S. at 226, 93 S.Ct. at 2047. In this case, we believe that the factors weigh against finding that the consent was involuntary. First, although LaGrone was only 19 years old at the time of the arrest, he does have a high school diploma and, as the government points out, has "the intelligence necessary to own and manage his own business." The officers carefully explained to LaGrone his rights and held him in custody for less than fifteen minutes before he consented to the search. While it is true that the officers asked LaGrone more than once whether he would consent to the search, we do not believe this constitutes the sort of repetitive psychological harassment that should tip the balance in favor of La-Grone.

Moreover, other factors point to the conclusion that LaGrone's consent was voluntary. The officers allowed LaGrone to call his attorney. They let him use the restroom. We do not believe the atmosphere was so highly stressful and coercive that a reasonable person would involuntarily consent to a search. Even when LaGrone decided to consent to the search, Sergeant Crasper was very careful to make sure that LaGrone knew his rights. Sergeant Crasper read through the consent to search form with LaGrone, asking him whether he understood each of the rights listed; LaGrone answered in the affirmative, initialled each line, and signed the form.

This case is analogous to *United States v. Rojas,* 783 F.2d 105 (7th Cir.1986), *cert. denied,* 479 U.S. 856, 107 S.Ct. 195, 93 L.Ed.2d 127 (1986). In *Rojas,* seven armed law enforcement officials executed an arrest warrant at Rojas' home during the evening. Rojas was handcuffed and taken to a small bathroom, where an FBI agent and a DEA agent asked Rojas if he would consent to a search of the house. Rojas was informed of his rights and signed a consent to search form. He later claimed that his consent to the search was not voluntary because he was fearful for the safety of two women in the house and was so frightened at the agents' show of force that he could not concentrate when they explained his rights. We found that the district court had not abused its discretion by holding that the consent was voluntary.

LaGrone points us to *United States v. Talkington,* 843 F.2d 1041 (7th Cir.1988), as support for his claim that his consent was not voluntary. In *Talkington,* the defendant was convicted of possession of counterfeit money. The evidence used to convict the defendant was seized during a warrantless nighttime search of his home. The defendant claimed that although he consented to the search of his home, the consent was involuntary. First, we note that we did not find that the search in *Talkington* was involuntary; we remanded so that the district court could conduct a hearing on the issue. No question, we were concerned that some of the facts alleged by the Talkingtons suggested the consent was involuntary, but as the lower court did not hold a suppression hearing, they were merely that—allegations. Specifically, four factors concerned us. First was the manner in which the officers entered the Talkington home; the agents forcibly entered with weapons drawn. *Id.* at 1048. Second, we were concerned about the agents' demeanors. The Talkingtons alleged that the agents spoke in "real loud, real mean" voices and at one time stated: "you better start cooperating and come clean, and we won't take you and your wife in...." *Id.* at 1049. Third, we were concerned that the agents might have lied to the Talkingtons, by suggesting that other agents were currently in the process of obtaining a warrant. However, no one ever took such steps. Finally, we were especially concerned that the consent might have been given in response to

the agents' alleged threats to conduct a body cavity search of Mrs. Talkington.[1]

Such egregious conduct did not occur in LaGrone's case. First, the officers were justified in entering LaGrone's store in the manner they did. The officers testified that they entered the store with their weapons drawn because they had information that LaGrone might have been armed: information that proved true. The officers also testified that two members of the team who wore raid masks did so to protect their identities. There is no evidence that, once the officers were assured that they were not in danger, they continued to have their guns drawn. Moreover, unlike *Talkington,* the officers in this case were executing a warrant, and they did so at his place of business, during the day.

Second, the officers in this case in no way threatened LaGrone. Third, although the officers did inquire with the prosecutor's office about obtaining a search warrant, they did not improperly use this fact to coerce LaGrone into consenting to the search. Finally, there is no evidence on the record that the officers in any way threatened the security or privacy of LaGrone or his girlfriend. LaGrone makes a conclusory statement that he was concerned that if he did not consent, the officers would somehow harm his pregnant girlfriend. He alleges no facts, however, that lend support to this belief, and the trial judge did not believe his story. We find no abuse of discretion in the trial court's determination that LaGrone voluntarily consented to the search of his business.

■ LaGrone next claims that, after he asked to talk to his attorney, the authorities should have ceased "interrogating"[2] him about whether he would sign the consent to search form. Our decision in *United States v. Glenna,* 878 F.2d 967 (7th Cir.1989), precludes this argument. In *Glenna,* we held that because requesting consent to search is not likely to elicit an incriminating statement, such questioning is not interrogation, and thus *Miranda* warnings are not required. *Id.* at 971. Other circuits are in accord with this principle. *See United States v. Rodriguez-Garcia,* 983 F.2d 1563 (10th Cir.1993); *United States v. Lewis,* 921 F.2d 1294 (D.C.Cir.1990); *Cody v. Solem,* 755 F.2d 1323 (8th Cir.), *cert. denied,* 474 U.S. 833, 106 S.Ct. 104, 88 L.Ed.2d 84 (1985); *Smith v. Wainwright,* 581 F.2d 1149 (5th Cir.1978); *United States v. Lemon,* 550 F.2d 467 (9th Cir.1977); *United States v. Faruolo,* 506 F.2d 490 (2nd Cir.1974).

LaGrone also argues against admission of the statement he made at the station. Although the argument is not clearly articulated,[3] LaGrone seems to assert that once he

1. "Threatening the physical privacy of a woman to coerce her or her spouse to acquiesce to the government's will has been a familiar tool of totalitarian regimes." *Talkington,* 843 F.2d at 1049 (footnote omitted).

2. Throughout this opinion, we use the term "interrogation" in the limited sense as defined in *Miranda* and its progeny—questioning, or its functional equivalent, that is likely to elicit an incriminating statement.

3. The district court did not address this particular argument at the suppression hearing, mainly, in our opinion, because LaGrone did not present it. Rather, he claimed that once Detective Stein and Agent Cronin began to interrogate him at the police station, he asked to speak to his attorney before answering any questions. He then claimed that the officers did not honor his request and he gave the confession. Thus, the statement was elicited in violation of *Edwards.* The district court stated,

> With respect to the incriminating statements made to Stein and Cronin while at the Detective Bureau, LaGrone testified that he did not voluntarily waive his rights and that he was questioned after invoking his right to an attorney. Detective Stein and Agent Cronin testified that LaGrone never requested an attorney, that he signed a waiver of rights form, and that he indicated he understood that he was waiving his rights.... After assessing the credibility of the witnesses, the court finds that LaGrone's constitutional rights were not violated and LaGrone voluntarily signed the waiver of rights form. The court further finds that LaGrone did not request an attorney while being interviewed at the Detective Bureau.

In light of the ambiguity of defendant's brief on this point to this court, LaGrone may have forfeited the argument he now makes. *United States v. Eddy,* 8 F.3d 577, 583 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1663, 128 L.Ed.2d 379 (1994). However, because it is possible to interpret his argument as being raised in the lower court and here, and because the government does not raise forfeiture, we address LaGrone's argument.

was in custody, was subjected to interrogation, and requested the opportunity to talk to his counsel about the request for consent to search, the state violated his rights by reinitiating contact at the police station. In *Miranda v. Arizona*, the Supreme Court held that, in order to protect a defendant's right under the Fifth Amendment against compelled self-incrimination, before police initiate custodial interrogation, they must advise a defendant that, in addition to other rights, he has the right to remain silent and the right to counsel. 384 U.S. 436, 467–72, 86 S.Ct. 1602, 1624–27, 16 L.Ed.2d 694 (1966). "The right to counsel established in *Miranda* was one of a 'series of recommended 'procedural safeguards' ... [that] were not themselves rights protected by the Constitution but were instead measures to insure that the right against compulsory self-incrimination was protected.'" *Davis v. United States*, —— U.S. ——, ——, 114 S.Ct. 2350, 2354, 129 L.Ed.2d 362 (1994). The court added another layer to that protection in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), and its progeny, by holding that once a defendant invokes his right to an attorney under *Miranda*, the defendant must reinitiate contact in order for the authorities to resume interrogation. "It remains clear, however, that this prohibition on further questioning—like other aspects of *Miranda*—is not itself required by the Fifth Amendment's prohibition on coerced confessions, but is instead justified only by reference to its prophylactic purpose." *Connecticut v. Barrett*, 479 U.S. 523, 528, 107 S.Ct. 828, 832, 93 L.Ed.2d 920 (1987).

▇ No one disputes that, at least as of the time he was handcuffed, LaGrone was in custody. It is also clear that an officer interrogated LaGrone at the scene. Officer Lapp found a handgun on a shelf under the store's cash register. Immediately after being handcuffed and read his *Miranda* rights, Officer Lapp asked LaGrone if the gun was his, and LaGrone answered that it was. Later, in response to a request for consent to search the store, LaGrone demanded that he be allowed to call his attorney. LaGrone appears to claim that this invoked his right under *Miranda* to speak with an attorney

prior to undergoing further police interrogation.

The Supreme Court has held that a defendant's invocation of his right to counsel for one purpose is not automatically an invocation of his right to counsel for other purposes. Most recently, in *McNeil v. Wisconsin*, 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991), the Court held that an invocation of a defendant's Sixth Amendment right to counsel was not an invocation of that defendant's *Miranda* right to counsel. The defendant was arrested and appeared before a court commissioner for a bail determination on an armed robbery charge. Counsel represented the defendant at the hearing. Later, a member of the sheriff's department approached McNeil concerning an unconnected murder investigation. The detective advised McNeil of his *Miranda* rights, and McNeil waived them. He later gave an incriminating statement. McNeil argued to the Court that the trial court should have suppressed the statement because the state had violated *Edwards* by initiating contact with the defendant after McNeil had been represented by counsel at the bail hearing. McNeil asserted that being represented by counsel at his bail hearing, thereby invoking his Sixth Amendment right to counsel, should have been sufficient to invoke his *Miranda* right to counsel. The Court disagreed. The Court found that counsel's appearance on behalf of McNeil at the bail hearing was not sufficient to invoke his *Miranda* right to counsel, and thus *Edward*'s prohibition on police reinitiation of contact after a defendant's invocation of the right to counsel was inapplicable.

> The rule of [*Edwards*] applies only when the suspect "ha[s] *expressed*" his wish for *the particular sort of lawyerly assistance that is the subject of Miranda*. It requires, at a minimum, some statement that can reasonably be construed to be expression of a desire for the assistance of an attorney *in dealing with custodial interrogation by the police*.

*Id.*, 501 U.S. at 178, 111 S.Ct. at 2209 (citations omitted) (last emphasis added); *see also Barrett*, 479 U.S. at 529, 107 S.Ct. at 832 (finding that defendant had requested a lim-

ited *Miranda* right to counsel, such that police could elicit oral, but not written, statements from defendant when the defendant stated that he wanted to talk to his attorney before making a written statement, but made "affirmative announcements of his willingness to speak with authorities").

■ It is clear from the context of the situation that LaGrone wanted to consult with his attorney about whether to consent to the search of his market. A person in custody has no federal constitutional right to consult with an attorney before consenting to a search of his property. However, the Indiana constitution does afford such a right. *Pirtle v. State*, 263 Ind. 16, 323 N.E.2d 634 (1975). To this end, the consent to search form used by Officer Crasper stated, "You have the right to talk to a lawyer before consenting to a warrantless search of your property. Do you understand this right?" Crasper read the form to LaGrone just before LaGrone asked to call his attorney. This indicates to us that LaGrone was requesting to talk to his attorney for the purpose of deciding whether to consent to the search of his business, which does not concern "the particular sort of lawyerly assistance that is the subject of *Miranda*." *McNeil*, 501 U.S. at 178, 111 S.Ct. at 2209.

But what reveals even more that he was invoking a limited right to counsel is his own testimony. At the suppression hearing, LaGrone testified as follows: "He [Sergeant Crasper] asked me did I want to sign a consent form for them to search my store,

and I told them no, *I wanted to talk to my lawyer before I signed anything....* [After failing to reach the attorney] he asked me again, did I want to sign the consent form and I said no ... because if he just let me call my lawyer and talk to my lawyer, and *I asked him should I sign it or not.*" (Emphasis added).[4] From this testimony, it is apparent that LaGrone only intended to talk to his attorney about whether to consent to the search.

The Supreme Court's recent pronouncement in *Davis v. United States*, also informs our decision. In *Davis*, the court reiterated that the determination of whether a defendant has invoked his *Miranda* rights is an objective one. It stated that if "a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel," he has not effectively invoked his rights under *Miranda*. *Davis*, — U.S. at —, 114 S.Ct. at 2355. We believe that a reasonable officer would have believed that LaGrone was invoking the state right to counsel that had just been explained to him.[5]

As important, LaGrone could not have invoked his *Miranda* right to counsel at the time he asked to call his attorney concerning the consent to search. At the time LaGrone asked to talk to his attorney, he was not in a custodial interrogation atmosphere.

■ The *Miranda* right to counsel attaches only in the context of custodial interrogation.[6] LaGrone apparently argues that

4. We believe that either the court reporter did not hear LaGrone clearly or LaGrone used incorrect grammar in the emphasized portion of the testimony. We believe that LaGrone either said or meant "so I could ask him whether I should sign the form or not." Unless we make this assumption, his testimony is gibberish.

5. Even if we were to believe that subjectively LaGrone may have been attempting to invoke his *Miranda* right to counsel, he did so, at best, ambiguously under the circumstances. The majority in *Davis* stated that if the defendant makes an equivocal or ambiguous request for counsel, the police may, in effect, ignore it and continue interrogating; they need not clear up the ambiguity. *Davis*, — U.S. at —, 114 S.Ct. at 2356. Thus, LaGrone could not have complained had he been interrogated without an attempt by the officers to determine whether he wanted an at-

torney present at interrogation. Four justices disagreed with the majority, believing that the authorities must make some effort to determine whether the defendant was in fact trying to invoke his right to counsel under *Miranda*. *Id.* at —, 114 S.Ct. at 2359. But the officers' conduct in this case meets even this higher standard. Before questioning him at the station, LaGrone was again read his *Miranda* rights, and he waived them. This surely cleared up any ambiguity. · Thus, the authorities went beyond what the Court in *Davis* required of them.

6. In *United States ex rel. Espinoza v. Fairman*, 813 F.2d 117 (7th Cir.), *cert. denied*, 483 U.S. 1010, 107 S.Ct. 3240, 97 L.Ed.2d 745 (1987), we held that, by invoking his Sixth Amendment right to counsel at a preliminary hearing, a defendant had invoked his *Miranda* right to counsel for future interrogations concerning other crimes.

once a defendant's right to counsel under *Miranda* is triggered, it is like the Energizer Bunny—it keeps going, and going, and going.... While this is true of the Sixth Amendment right to counsel—once the government initiates formal charges against the defendant, he has a right to counsel at all future "critical stages," *see Maine v. Moulton*, 474 U.S. 159, 168–70, 106 S.Ct. 477, 483–84, 88 L.Ed.2d 481 (1985); *United States v. O'Leary*, 856 F.2d 1011, 1014 (7th Cir.1988)—we believe that there are certain "windows of opportunity" in which a defendant must assert his *Miranda* right to counsel. A defendant must clearly invoke his right to counsel from each constitutional source, at a time when the right is available.[7] The Supreme Court has stated,

> We have in fact never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than "custodial interrogation"—which a preliminary hearing will not always, or even usually, involve. If the *Miranda* right to counsel can be invoked at a preliminary hearing, it could be argued, there is no logical reason why it could not be invoked by a letter prior to arrest, or indeed even prior to identification as a suspect. Most rights must be asserted when the government seeks to take the action they protect against.

*McNeil*, 501 U.S. at 182 n. 3, 111 S.Ct. at 2211 n. 3. It is true that an aside contained in a footnote in *Michigan v. Jackson*, 475 U.S. 625, 633–34 n. 7, 106 S.Ct. 1404, 1409 n. 7, 89 L.Ed.2d 631, (1986), would appear inconsistent with our holding. In *Jackson*, the Court stated:

> We also agree with the comments of the Michigan Supreme Court about the nature of an accused's request for counsel: "Although judges and lawyers may understand and appreciate the subtle distinctions between the Fifth and Sixth Amendment rights to counsel, the average person does not. When an accused requests an

attorney, either before a police officer or a magistrate, he does not know which constitutional right he is invoking; he therefore should not be expected to articulate exactly why or for what purposes he is seeking counsel.... The simple fact that defendant has requested an attorney indicates that he does not believe that he is sufficiently capable of dealing with his adversaries singlehandedly."

*Id.* at 633–34 n. 7, 106 S.Ct. at 1409–10 n. 7 (citations omitted). While both pronouncements are dicta, the *McNeil* language came five years after *Jackson*, and we believe represents more closely the state of the law today. Moreover, the Court in *Jackson* explicitly declined to decide whether an invocation of the Sixth Amendment right to counsel would suffice to invoke the *Miranda* right to counsel, *Jackson*, 475 U.S. at 630 n. 4, 106 S.Ct. at 1408 n. 4, whereas *McNeil* suggested it would not. *McNeil*, 501 U.S. at 182 n. 3, 111 S.Ct. at 2211 n. 3. Most importantly, we are presented with a request for counsel in a vastly different context than that presented in the dicta of *Jackson*. The language quoted from *Jackson* is in response to a suggestion by the State that the Sixth Amendment request to be represented by counsel at the bail hearing "be construed to apply only to representation in formal legal proceedings." *Jackson*, 475 U.S. at 633, 106 S.Ct. at 1409. Thus the State was asking the Court to reverse longstanding precedent which holds that a defendant has a Sixth Amendment right to counsel at all critical stages after formal charges have been filed. In sum, Justice Scalia's sentiment in *McNeil* is particularly apt here.

> It can be said, perhaps, that it is *likely* that one who has asked for counsel's assistance in defending against a prosecution would want counsel present for all custodial interrogation.... But even if it were true, the *likelihood* that a suspect would wish counsel to be present is not the test

The Supreme Court's decision in *McNeil* directly overruled that holding and undercut the rationale the decision relied upon. To the extent *Fairman* could have been read to allow a defendant to invoke his *Miranda* rights outside the context of custodial interrogation, the decision is no longer of precedential value.

7. Of course, this does not mean that the defendant must "name his poison" by declaring which constitutional right he is invoking. We merely require that the defendant invoke his right to counsel at a time when the preconditions are met.

for applicability of *Edwards*. The rule of that case applies only when the suspect "ha[s] *expressed* " his wish for the particular sort of lawyerly assistance that is the subject of Miranda.

*McNeil*, 501 U.S. at 178, 111 S.Ct. at 2209.

Officer Lapp read LaGrone his *Miranda* rights. Officer Lapp asked LaGrone if he understood the rights he had just been read, and LaGrone responded that he did understand them. Later, a different officer, Sergeant Crasper, asked LaGrone to consent to a search of his business.

Some time elapsed before Sergeant Crasper requested consent from LaGrone. LaGrone asked to use the restroom, and the officers took off his handcuffs and allowed him to do so. He was then taken to a separate area, away from where the arrest took place, and asked by Sergeant Crasper whether he would consent to a search of his business. As discussed above, a request for consent to search is not interrogation. In response to these requests, LaGrone asked to be allowed to call his attorney.[8] But, LaGrone did not request an attorney *immediately before, in response to, or during custodial interrogation*. LaGrone's request for an attorney and Officer Lapp's brief, one question interrogation were distinct in time.

Three other Circuit Courts of Appeals have already held that a defendant may not invoke his *Miranda* rights outside the context of custodial interrogation. *Alston v. Redman*, 34 F.3d 1237 (3rd Cir.1994); *United States v. Thompson*, 35 F.3d 100 (2nd Cir.1994) (counsel filed "Notice of Entry of Appearance as Attorney or Representative" with INS); *United States v. Wright*, 962 F.2d 953 (9th Cir.1992) (counsel requested at plea hearing to be present at all interviews with

the defendant). In *Alston v. Redman*, the plaintiff filed a writ of habeas corpus claiming that his conviction was illegal because it was based on self-incriminating statements taken in violation of *Edwards*. On August 23, 1985, the defendant was taken into custody and questioned about a series of robberies. Three days later he signed a form provided by the public defender's office expressing the desire to communicate with the authorities only with his counsel present. On August 29th, the authorities again interrogated Alston, and he gave an incriminating statement. This statement, Alston claimed, was procured in violation of *Edwards*. The court held that the defendant had not invoked his *Miranda* rights. We find the Third Circuit's analysis forceful. After noting both that *McNeil* explicitly suggests such an outcome and recent Supreme Court cases indicate the Court is not inclined to extend the *Miranda/Edwards* protections, the court stated "As the Supreme Court recognized in [*Rhode Island v.] Innis*, [446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297] [ (1980) ], '[i]t is clear ... that the special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation.' " *Alston*, 34 F.3d at 1246–47.[9] The "inherent compulsion" that is brought about by the *combination* of custody and interrogation is crucial for the attachment of *Miranda* rights. *See Miranda*, 384 U.S. at 478, 86 S.Ct. at 1630.

We agree with the Third Circuit that in order for a defendant to invoke his *Miranda* rights the authorities must be conducting interrogation, or interrogation must be imminent. Such a requirement advances the twin goals of *Miranda:* providing an opportunity for the defendant to dissipate

---

**8.** Importantly, the record reveals that the officers conducted no interrogation after Officer Lapp's single question. Of course, had the officers interrogated LaGrone, in addition to asking for consent to search, they clearly would have violated his rights under *Edwards* by reinitiating contact at the police station.·

**9.** The opinion also found support in our nation's constitutional framework.

[T]he rights guaranteed by the Constitution of the United States are primarily negative in character, standing guard as vigilant sentinels

at the perimeter of permissible state conduct. It is only at the time that the state seeks to invade this citadel of individual liberty that these constitutional guarantees can be summoned to battle.

*Alston*, 34 F.3d at 1247. The court then analogized the Fifth Amendment's negative right against self-incrimination to the right of free speech, the right to be free from unreasonable searches and seizures, the right to be free from double jeopardy, and the right to due process.

the compulsion and allowing law enforcement the ability to conduct investigations. We believe that not allowing a defendant to invoke his *Miranda* rights anticipatorily does not place an arduous burden on the defendant—all he needs to do is invoke his right in response to or just before interrogation. Thus there is no concern that our holding will allow law enforcement to badger a defendant, which *Edwards* was meant to protect against. *See Wright,* 962 F.2d at 956 (stating that "not talking about charges unrelated to those on which he is represented is up to the defendant, who can simply say 'no.' ").

■ The balance of LaGrone's contentions merit little discussion. He contests his conviction of possession of a firearm in relation to drug trafficking on the ground that insufficient evidence existed to conclude that he used the firearm in connection with the drug offense. LaGrone argues that there was insufficient evidence to sustain a conviction on Count II, knowingly using and carrying a firearm during and in relation to a drug trafficking crime. LaGrone has forfeited this argument. Under Federal Rule of Criminal Procedure 29 (FRCrP), a defendant must preserve a sufficiency of the evidence argument by making a motion for judgment of acquittal at the close of trial or within seven days of the verdict. FED.R.CRIM.P. 29(c); *United States v. Pless,* 982 F.2d 1118, 1122 (7th Cir.1992). Absent his doing so, we will review the argument only if his conviction has resulted in a manifest miscarriage of justice. *United States v. James,* 923 F.2d 1261, 1267 (7th Cir.1991). LaGrone made no such motion, and we find no miscarriage of justice in his conviction on Count II.

■ Finally, LaGrone disputes the procedures used at his sentencing. LaGrone contends that Judge Lee failed to make sufficient written findings, as required by FRCrP 32(c)(3)(D), concerning LaGrone's five factual objections to the Presentence Report (PSR). *See United States v. Villasenor,* 977 F.2d 331, 338–39 (7th Cir.1992), *cert. denied sub nom. Harris v. United States,* —— U.S. ——, 113 S.Ct. 1340, 122 L.Ed.2d 723 (1993). He requests that we remand to allow Judge Lee to make such written findings. In fact, Judge Lee made the requisite findings. In

the two addenda to the PSR, the court indicated that it was adopting the probation officer's position on each of the objections and signed the documents. This is sufficient to meet the requirements of FRCrP 32(c)(3)(D).

For the above reasons, the defendant's conviction and sentence are AFFIRMED.