OPINION
Appellant Howard Johnson appeals a judgment of the Licking County Common Pleas Court convicting him of five counts of gross sexual imposition (R.C. 2907.05 (A)(4)):
ASSIGNMENTS OF ERROR
ASSIGNMENT OF ERROR NO. I
A TRIAL COURT ERRS IN FAILING TO SUPPRESS STATEMENTS MADE AFTER APPELLANT INVOKED HIS RIGHT TO COUNSEL AND THE TOTALITY OF THE CIRCUMSTANCES FAIL TO DEMONSTRATE A WAIVER OF THE PREVIOUS INVOCATION.
ASSIGNMENT OF ERROR NO. II
APPELLANT WAS DENIED HIS RIGHT TO EQUAL PROTECTION UNDER THEFOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION BY THE STATE'S EXERCISE OF A PEREMPTORY CHALLENGE TO EXCLUDE A MEMBER OF A MINORITY GROUP FROM THE JURY.
ASSIGNMENT OF ERROR NO. III
THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR AN ORDER FINDING SECTION 2950.09 (B) UNCONSTITUTIONALLY VAGUE THUS DENYING THOSE FACING ITS APPLICATION DUE PROCESS OF LAW.
ASSIGNMENT OF ERROR NO. IV
THE TRIAL COURT ERRED IN CLASSIFYING APPELLANT AS A "SEXUAL PREDATOR" WITHOUT A RECORD OF CLEAR AND CONVINCING EVIDENCE TO SUPPORT THE FINDING.
ASSIGNMENT OF ERROR NO. V
IMPROPER REMARKS MADE BY THE PROSECUTOR DURING CLOSING ARGUMENT CONSTITUTE PROSECUTORIAL MISCONDUCT WHICH DEPRIVED APPELLANT OF A FAIR TRIAL.
ASSIGNMENT OF ERROR NO. VI
APPELLANT'S RIGHTS UNDER ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITION [SIC] WERE VIOLATED AND APPELLANT WAS THEREBY IMPROPERLY DENIED AN ACQUITTAL UNDER RULE 29 OF THE OHIO RULES OF CRIMINAL PROCEDURE WHEN HIS CONVICTIONS WERE NOT SUPPORTED BY THE EVIDENCE.
Carrie and Keith Findlay are the parents of Kendra Findlay . Carrie and Keith separated in the fall of 1997. Kendra was nine years old at the time. In February of 1998, appellant moved in with Carrie and her two children. Appellant and Carrie had met while both were working at Value City. On one occasion after moving in with Carrie, appellant was home alone with the children, as Carrie was in the hospital. Kendra was taking a bath. Appellant started washing her, including her breasts and her vaginal area. He asked Kendra if she liked him washing her vaginal area, and spent more time washing that area. He told her not to tell anyone what happened, or both of them would be in trouble. On a second occasion, while Kendra was playing in her bedroom and her mom was asleep, appellant asked Kendra to come help him cook supper. While she was helping in the kitchen, he reached inside her clothing and rubbed her vaginal area. On a second occasion, shortly before she went to visit her grandmother in June of 1998, appellant again asked Kendra to help him in the kitchen. He asked her to lift up her shirt. When she refused to comply, he reached down her shirt and began touching her breasts. He again stuck his hand inside her pants, and rubbed her vaginal area. While visiting her grandmother in June of 1998, Kendra told her grandmother that she did not want to return to her mother's house. As a result of this conversation, Kendra's grandmother and father contacted the police. After Kendra was interviewed by a police officer and a representative from Licking County Children's Services, Detective Robert Huffman of the Newark Police Department requested that appellant come to the police station for an interview. Appellant came to the police station. During the interview, he admitted to bathing Kendra, claiming she needed help with her bath because she had a hygiene problem. He admitted that the wash cloth slipped off his hand, yet he continued to wash her breasts and vaginal area without using a wash cloth. He also admitted he probably washed her vaginal area longer than necessary, as he was getting sexual gratification from the contact. He also admitted that he asked Kendra if what he was doing felt good. While he initially claimed that he may have accidentally touched her breasts while they were wrestling in the kitchen, he eventually admitted to fondling her breasts. Appellant was charged with five counts of sexual imposition. His motion to suppress his statement to Detective Huffman was overruled following a hearing. The case proceeded to jury trial in the Licking County Common Pleas Court. Appellant was convicted of all five counts. He was sentenced to two years incarceration on each count. The sentences on counts one and two were to run concurrently to each other, but consecutively to the sentences on counts three, four and five. The sentences on counts four and five were to run concurrently to each other, and consecutively to the sentences for counts one, two, and three. In addition, the court adjudicated appellant to be a sexual predator.
 I
Appellant claims that he was improperly questioned by Detective Huffman after invoking his right to counsel. According to the court's findings of fact from the suppression hearing, appellant went to the Newark Police Department at the request of Detective Huffman on June 23, 1998. Arrangements for the interview were made through telephone conversations. Upon appellant's arrival, Detective Huffman asked appellant to have a seat in the lobby while they waited for the arrival of a social worker, who was to participate in the interview. Appellant remained in a lobby area, which was open to the public. After a short time, appellant advised a secretary that he no longer wished to wait, and that if Detective Huffman wanted to talk to him, he would have to contact appellant's attorney. After making the statement, appellant proceeded to leave the lobby area. Detective Huffman, having overheard appellant's statement to the secretary, followed appellant. He caught up with appellant near the stairway leading out of the police department. Detective Huffman asked appellant what the problem was. At this time appellant repeated his statement, telling Detective Huffman he would have to speak to appellant's attorney. Based upon the evidence he had acquired up to this point in the investigation, Detective Huffman elected to arrest appellant. Appellant was taken into custody, and brought down the stairway, back into the police department. During this period of time, appellant offered to remain seated in the lobby while waiting for his attorney. Detective Huffman did not respond. While appellant was being taken back to the detective division with the intention of processing his arrest, appellant said, "I don't even know what all of this is about." In response to that statement, Detective Huffman asked appellant if he wished to talk without an attorney. Detective Huffman made it clear to appellant that the decision as to whether or not he wished to talk would have no bearing on whether he was going to be incarcerated. Appellant then indicated that he did wish to talk. Appellant was thereafter advised of his rights pursuant to Miranda v. Arizona, and gave a statement to Detective Huffman. In McNeil v. Wisconsin (1991), 501 U.S. 171, 182, at footnote three, the United States Supreme Court noted in dicta that the court had never held that a person can invoke his Miranda right to counsel anticipatorially, in a context other than custodial interrogation. The fact that the court had in the past allowed the Miranda right to counsel, once asserted, to be effective with respect to future custodial interrogation, did not necessarily mean that the court would allow such right to be asserted initially outside the context of a custodial interrogation. Id. A number of federal courts have used this footnote, on various fact patterns, to hold that a defendant may not invoke his right to counsel under Miranda in the absence of both interrogation and custody. In United States v. Barrett (Alaska 1992), 814 F. Supp. 1449, 1454, the court noted that the McNeil footnote appeared to support the proposition that an accused cannot invoke his right to counsel until he is taken into custody, and prior to interrogation, warned of those rights. In United States v. Wright (9 th Cir. 1992), 962 F.2d 953, 955, the court noted that the McNeil footnote strongly suggests the Miranda rights may not be invoked in advance, outside the custodial context. Likewise, the court in Alston v. Redman (3rd Cir. 1994),34 F.3d 1237, 1248, cert. denied (1995), 513 U.S. 1160, the court concluded that there must be both custody and interrogation before the right to counsel can be invoked. The Seventh Circuit concurred, holding that the Miranda right to counsel attaches only in the context of custodial interrogation and may not be waived anticipatorially. United States v. LaGrone (7th Cir.),43 F.3d 332, 337. Prior to the Supreme Court's holding in McNeil, Ohio's Ninth District Court of Appeals held that the right to counsel, requested or not, does not attach until a suspect is in custody. State v. Fry (1988), 61 Ohio App.3d 689. The Fry court cited to the United States Supreme Court's decision in Minnesota v. Murphy (1984), 465 U.S. 420, 424 at footnote 3, where the court stated that when a person is not in custody, he had no right to have an attorney present. The court in Fry allowed an officer to initiate further discussions with the defendant, despite his request for counsel, as his request for counsel was made during a non-custodial situation. 61 Ohio App.3d at 62. The court concluded that as long as the persistence in questioning by the officer did not render the statement involuntary, the officer may ignore a non-custodial request for counsel. Id. It is clear that appellant's first two statements in the instant case regarding an attorney were not made when he was in custody, as he came voluntarily and was free to go. In fact, appellant began to leave the police station, before he was arrested. At the time he was sitting in a public lobby, awaiting the arrival of the social worker, he was not in custody. After he was taken into custody by Detective Huffman, he made no further request for an attorney, and executed a valid waiver of his rights pursuant to Miranda. Appellant signed a written Miranda form, without requesting his counsel be present for questioning. The first assignment of error is overruled.
 II
Appellant argues that his right to equal protection was violated, as the prosecutor improperly exercised a peremptory challenge to remove an African-American juror, James Williams, from the jury on the basis of race. Under Batson v. Kentucky (1986), 476 U.S. 79, a criminal defendant must first make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. The fact that the prosecutor excused only one prospective juror of a minority group does not prohibit a Batson challenge. State v. White (1999), 85 Ohio St.3d 433, 436. After the defendant makes a prima facie showing, the burden shifts to the prosecution to articulate a race neutral explanation for striking the juror. Batson, supra. Batson does not require that a legitimate race-neutral reason be a reason that makes sense, but must be a reason that does not deny equal protection. Purkett v. Elem (1995), 514 U.S. 765, 769. Even a silly or superstitious reason, or mere hunch, which on its face is race neutral, will satisfy the State's burden of producing a race-neutral reason for the peremptory challenge, if believed by the trial court. Id. In Purkett, the United States Supreme Court upheld a race-neutral peremptory challenge exercised against a juror for having long, curly, unkept hair. Id. In the instant case, following appellant's Batson challenge, the court required the prosecutor to produce a race-neutral reason for the challenge. In response, the State expressed concerns about the juror's employment, as despite three years of college education, he was doing manual labor. Further, the prosecutor was concerned about the juror's prior affiliation as a witness in a domestic violence case. In his brief, appellant argues that these reasons are pretextual. Appellant argues that many college-educated persons choose to work in manual labor. Further, appellant places much weight on the prosecutor's incorrect recollection of the juror's statement that he was involved in the case on the defense side, and therefore would tend to be more lenient with appellant, based on appellant's past conviction for domestic violence. In fact, the juror stated that he testified on behalf of the victim in the domestic violence case in which he was involved. Despite appellant's argument, as noted earlier, the State's reason for exercising a peremptory challenge may be based on a hunch, yet still be race-neutral. In the instant case, the reasons given by the prosecutor were race neutral. Having given a race-neutral explanation, the burden then shifted back to appellant to prove purposeful discrimination. Hernandez v. New York (1991), 500 U.S. 352, 358-359. Appellant failed to establish purposeful discrimination on the record. The second assignment of error is overruled.
 III
Appellant argues that Chapter 2950 of the Ohio Revised Code is unconstitutionally vague. This court has previously rejected this argument on numerous occasions. E.g., State v. Ridenbaugh (May 27, 1999), Licking App. No. 97-CA-149, unreported. The third assignment of error is overruled.
 IV
Appellant argues that the judgment finding him to be a sexual predator is against the weight of the evidence. A judgment supported by some competent, credible evidence will not be reversed by the reviewing court as against the manifest weight of the evidence. C. E. Morris v. Foley Construction Company (1978),54 Ohio St.2d 279. A sexual predator is statutorily defined as the person who has been convicted of a sexually oriented offense, and is likely to engage in the future in one or more sexually oriented offenses. R.C. 2950.01 (E). In determining whether an individual is a sexual predator, the court is to consider the following factors:
(a) The offender's age; (b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses; (c) The age of the victim of the sexually oriented offense for which sentence is to be imposed; (d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims; (e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting; (f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders; (g) Any mental illness or mental disability of the offender; (h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse; (I) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty; (j) Any additional behavioral characteristics that contribute to the offender's conduct. R.C. 2950.09 (B) (2). At the time of the offense, the victim was nine years old, while appellant was thirty-one. Appellant had twice been convicted of domestic violence. Appellant was released on bond on a felony domestic violence charge when he committed the instant offenses. The offenses took place over a period of several months, demonstrating a pattern of abuse. The court specifically found the abuse would likely have continued had the victim not reported it to her grandmother. The judgment finding appellant to be a sexual predator is not against the manifest weight of the evidence. The fourth assignment of error is overruled.
 V
Appellant argues that during the closing argument, the prosecutor made five improper remarks which constitute prosecutorial misconduct. Appellant acknowledges that he did not object to any of these alleged instances of misconduct, and we therefore must find plain error to reverse. Plain error does not exist unless but the error, the outcome of the trial would clearly have been otherwise. State v. Nicholas (1993), 66 Ohio St.3d 431. Concerning credibility, the prosecutor may bolster his own witnesses, and conclude by saying, in effect, that the evidence supports the conclusion that the witnesses are telling the truth. State v. Draughn (1992), 76 Ohio App.3d 664, 670. He cannot say that he personally believes the witnesses, because such argument invades the province of the jury, and invites the jury to decide the case based upon the credibility and status of the prosecutor. Id. As to the defense witnesses, including the defendant, the prosecutor may comment on the testimony, and suggest the conclusion that is to be drawn therefrom. Id. He can say that the evidence supports the conclusion that the defendant is lying, is not telling the truth, is scheming, or has ulterior motives for not telling the truth. Id. He may not say he personally believed the defendant is lying. Id. The prosecutor may not invite the jury to judge the case upon standards or grounds other than the evidence and law of the case. Id. at 671. Thus, he cannot inflame the passion and prejudice of the jury by appealing to community abhorrence or expectations with respect to crime in general, or crime of the specific type involved in the case. Id. Appellant first argues that it was improper for the prosecutor to comment that Detective Huffman did not have a motive to lie about what appellant said during his confession. Tr. 248. This comment was not improper. The prosecutor was not stating that he personally believed the witness, but rather was commenting on the lack of motivation for the witness to lie. Second, appellant argues that the prosecutor improperly commented on the credibility of the victim: In terms of judging who to believe, you can use the several things, just like you can use Kendra's demeanor on the stand yesterday that showed she's credible, I can believe that young child; you can use Mr. Johnson's demeanor yesterday to decide to disbelieve him, and you probably got a good idea why Detective Huffman had such a difficult time getting a straight answer from the defendant, because he doesn't know how to give a straight answer.
That ten-year-old young lady is smart enough to figure that out. Why did she get the train going in the first place if it weren't for the fact that these allegations are true?
Tr. 247, 266.
While the prosecutor did use the phrase, "I can believe that young child", he was not saying that he personally believed the child, but was instead explaining to the jury that they can use her demeanor to determine she's believable, while using appellant's demeanor to decide to disbelieve his testimony. The remaining comments about Kendra being smart enough to figure certain things out, and the question concerning why she would "get the train going" in the first place, are comments on her lack of motivation to make up the story simply to get appellant into trouble. These were fair comments upon the evidence, as counsel for appellant suggested that once Kendra "got the train going" by making up the story about appellant, she could not stop the train. Third, appellant argues that the prosecutor improperly referred to him as a child molester in the closing argument. The prosecutor stated that he would stand behind the defendant so the jury could look at him, because he wanted the jury to see what a child molester looks like. Tr. 267. He used the phrase "child molester" several times in that same small portion of his argument. While the comment may have been an improper attempt to appeal to the community abhorrence of the specific type of crime involved in this case, the isolated reference, used in one small portion of the prosecutor's rebuttal closing argument, did not deny appellant a fair trial. Finally, appellant argues that the prosecutor improperly inferred that he was lying. The prosecutor suggested that because appellant had all the answers, and could give the jury every minute detail of what happened, his testimony was unbelievable, because it was too "pat". Tr. 268. Again, the prosecutor did not say that he personally did not believe the defendant, but rather, commented on the believability of his testimony. The fifth assignment of error is overruled.
 VI
Appellant argues that the evidence is insufficient to support the verdict, as there was no evidence that the contact, other than that which occurred during the bath, was for the purpose of sexually arousing or gratifying appellant. Sufficiency of the evidence is a term of art meaning the legal standard applied to determine whether the case may go to the jury, or whether the evidence is legally sufficient to support the verdict as a matter of law. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. In deciding whether the purpose of the defendant was sexual arousal or gratification, the trier of fact may consider the type, nature, and circumstances of the contact, along with the personality of the defendant. State v. Munday (1994), 99 Ohio App.3d 275, 288. In the instant case, the first incident which occurred was the incident in the bathtub. Appellant admitted to Detective Huffman that he touched Kendra in the bathtub for purposes of sexual gratification. He also asked her during the encounter whether she liked it. From this evidence, the jury could infer that subsequent contact with her breasts and vaginal area was for purposes of appellant's sexual gratification. Further, it is apparent that on both occasions in the kitchen, appellant called Kendra into kitchen with him, when no other members of the household were present. As the evidence was sufficient to allow the jury to find appellant guilty of gross sexual imposition, the court did not err in overruling appellant's motion for a directed verdict of acquittal pursuant to Crim. 29 (A). The sixth assignment of error is overruled.
The judgment of the Licking County Common Pleas Court is affirmed.
By Gwin, P.J., Hoffman, J., and Farmer, J., concur