In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 06-3968

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHARLES M. JOHNSON, JR.,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 06 CR 9—**John Daniel Tinder,** *Judge.*

_____

ARGUED APRIL 10, 2007—DECIDED JULY 30, 2007

_____

Before BAUER, POSNER and RIPPLE, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Charles Johnson was charged in a two-count indictment with production of child pornography in violation of 18 U.S.C. § 2251(a)[1] and (e).[2] Mr. John

_____

[1] 18 U.S.C. § 2251 (a) provides:

(a) Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in interstate or foreign commerce, or in any

(continued...)

[1] (...continued)

Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed.

[2] 18 U.S.C. § 2251 (e) provides:

(e) Any individual who violates, or attempts or conspires to violate, this section shall be fined under this title and imprisoned not less than 15 years nor more than 30 years, but if such person has one prior conviction under this chapter, section 1591, chapter 71, chapter 109A, or chapter 117, or under section 920 of title 10 (article 120 of the Uniform Code of Military Justice), or under the laws of any State relating to aggravated sexual abuse, sexual abuse, abusive sexual contact involving a minor or ward, or sex trafficking of children, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, such person shall be fined under this title and imprisoned for not less than 25 years nor more than 50 years, but if such person has 2 or more prior convictions under this chapter, chapter 71, chapter 109A, or chapter 117, or under section 920 of title 10 (article 120 of the Uniform Code of Military Justice), or under the laws of any State relating to the sexual exploitation of children, such person shall be fined under this title and imprisoned not less than 35 years nor more than life. Any organization that violates, or attempts or conspires to violate, this section

(continued...)

son filed a motion to suppress certain evidence on the ground that his consent to the search was involuntary. He also claimed that his waiver of his *Miranda* rights was involuntary. The district court conducted an evidentiary hearing and denied Mr. Johnson's motion to suppress. Mr. Johnson pleaded guilty but preserved his right to appeal the denial of his motion to suppress. The district court accepted his plea. After a sentencing hearing, Mr. Johnson was sentenced to concurrent terms of life imprisonment. He timely filed this appeal. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

### A.

The National Center for Missing and Exploited Children ("NCMEC") conducted an investigation into sexually explicit images of a prepubescent female known as Jane Doe. Images of this young girl had been found on several individuals' computers and were labeled with Jane Doe's actual name. NCMEC analysts used this information to locate the girl in Indianapolis, Indiana.

Law enforcement officials interviewed Jane Doe. She stated that a man she called "Charlie" had been a live-in

---

[2] (...continued)

    shall be fined under this title. Whoever, in the course of an offense under this section, engages in conduct that results in the death of a person, shall be punished by death or imprisoned for not less than 30 years or for life.

babysitter for her neighbor's family. She stated that "Charlie" had taken nude photos of her since she was six or seven years old and that he had molested her and two of the children living with him at the time. She also stated that the photos had been taken with a silver digital camera and that she had seen him transfer the photos to a black Dell-brand computer.

"Charlie" was identified as Mr. Johnson, and a warrant for his arrest issued on December 15, 2005. Law enforcement officials executed this arrest warrant the following day at a home in Cincinnati, Ohio. Mr. Johnson resided there as a live-in babysitter for the same family with whom he had lived in Indianapolis.

The law enforcement officials who went to arrest Mr. Johnson included Agent Tim Rothrock and Sergeant Chris Hunt. The officers knocked on the door of the home, and the owner allowed them inside. The officers proceeded to the basement where the owner told them Mr. Johnson could be found. Sgt. Hunt had left his firearm in the car, and, although Agent Rothrock had his firearm in his hand, he carried it behind his back. The agents identified themselves to Mr. Johnson, who was in the basement with a toddler. The toddler was removed from the room. Agent Rothrock then put away his firearm and did not take it out again during the interview with Mr. Johnson.[3] The law enforcement officers told Mr. Johnson his name had come up during an investigation and read him his *Miranda* rights. Mr. Johnson and the officers each signed a form indicating Mr. Johnson's waiver of his *Miranda* rights.

---

[3] Mr. Johnson later testified that he never saw the firearm.

The two officers then proceeded to a small bedroom where they interviewed Mr. Johnson. The tone was conversational and, although there were other officers in the home, only Sgt. Hunt and Agent Rothrock remained in the room with Mr. Johnson. Mr. Johnson stated that he had lived with the children who had been depicted in the photographs and that he had a computer in his bedroom area. Agent Rothrock asked if Mr. Johnson would consent to a search of his bedroom area and his computer, and Mr. Johnson calmly replied that he would not. Agent Rothrock then asked Mr. Johnson if he would continue talking; Mr. Johnson replied that he would. Mr. Johnson then confirmed that he owned a black Dell computer and that he likewise owned a silver digital camera. At this point in the conversation, Agent Rothrock gave Mr. Johnson more information about the investigation including the fact that a victim had stated that he had taken photos of her and that he had used a specific digital camera and computer. Further, Agent Rothrock told Mr. Johnson that some of these photos had been found on the internet. He then told Mr. Johnson that he believed he had probable cause to obtain a search warrant which would allow him to search Mr. Johnson's computer and living area. He explained that the statement about the warrant was not meant as a threat and that a magistrate judge, and not he, would make the decision as to whether to issue a warrant. Agent Rothrock then told Mr. Johnson he would have to secure the residence until the magistrate judge could be contacted, which would involve limiting the residents' ability to enter and exit the house.

The officers then left and Agent Rothrock contacted an Assistant United States Attorney ("AUSA") in Indianapolis. He described the house and the property inside the

house, including the computer and the camera, in which Mr. Johnson retained a privacy interest. He also discussed the factors that supported probable cause, at which point the AUSA agreed to start the process of obtaining a search warrant. Agent Rothrock then returned to the home, told Mr. Johnson that the process of obtaining a warrant had been started and that the AUSA believed that probable cause existed. Agent Rothrock again asked Mr. Johnson if he would consent to a search. Sgt. Hunt recalled Agent Rothrock stating that Mr. Johnson's consent "could possibly save time for us." R.53 at 105-06.

Mr. Johnson was read forms acknowledging his consent to the search of his computer and his living area, and he was reread his *Miranda* warnings. Mr. Johnson signed both forms. Mr. Johnson stated that the police might find child pornography on the computer. The officers continued to question Mr. Johnson about the child pornography on his computer. Mr. Johnson then acknowledged that he had taken the photos. He declined to answer any questions as to the identity of the children in the photos and was then asked if he wished to speak to an attorney regarding that particular question; he replied that he would.

Mr. Johnson identified Jane Doe in one photograph in which she was fully clothed and stated that the photo had been taken in his Indianapolis bedroom. He declined to answer questions about whether he had any knowledge as to how the photo had become available on the internet and stated that he wished to speak to an attorney as to that question as well. When Agent Rothrock sought confirmation that Mr. Johnson wished to speak to an attorney regarding that question only, Mr. Johnson declined to answer any further questions. At that point, Mr. Johnson's computer was removed, and he was arrested.

On July 6, 2006, the district court held a suppression hearing. Mr. Johnson testified that he had not seen Agent Rothrock's weapon when he came down the stairs. He stated that the officers were not harsh or mean to him. He also said that he understood that he was suspected of a crime and that he had signed the *Miranda* waiver. He agreed that he never felt threatened or coerced into answering questions. He further stated that he was concerned for the other residents of the home because Agent Rothrock had mentioned his intent to secure the home until the search warrant was issued. He claimed that his consent to the search was involuntary because he perceived that hardship would befall other members of the household if he persisted in declining consent. When he invoked his right to counsel as to certain questions, he indicated that he did not believe he had to answer questions on those topics. He stated that he had read and understood the consent to search forms and the *Miranda* waiver at the time he signed it.

Mr. Johnson's computer was found to contain approximately 3,700 images of child pornography and child erotica. The nine images of Jane Doe found by the NCMEC were on the computer, and the computer allowed file sharing.

## B.

The district court found that Mr. Johnson's consent to search his living area and computer was voluntary. The court did not believe that Agent Rothrock's statements that he would secure the home while a search warrant was obtained had overborne Mr. Johnson's free will. The district court found this consent to be voluntary because

Mr. Johnson (1) was approximately 48 years old, had two years of college and had his associate's degree, (2) had demonstrated computer savvy, (3) had gained and used managerial experience in his employment, (4) had declined consent earlier in the encounter and stated that he did not feel threatened, (5) had consented after he was told that the process of obtaining a warrant had commenced, (6) had been read his *Miranda* warnings a second time, (7) had consented after one hour and five minutes which was not an overly long period of detention, (8) was not barraged with requests for consent, and (9) was not subject to a threatening atmosphere. The district court also found that Mr. Johnson selectively had waived his *Miranda* rights, only requesting counsel as to two specific questions which was an ambiguous assertion of his right to counsel as to all questions. Finally, the district court found that, even if his consent were not voluntary, the evidence would not be suppressed because it would be admissible under the inevitable discovery doctrine.

At sentencing, the district court computed, without objection, the sentencing guidelines range. The applicable guidelines range of 188-235 months was trumped by 18 U.S.C. § 3559(e),[4] which requires mandatory life imprisonment for repeated sex offenses against children. Mr.

---

[4]  18 U.S.C. § 3559(e) provides:

> (e) Mandatory life imprisonment for repeated sex offenses against children.—
>
>> (1) In general.—A person who is convicted of a Federal sex offense in which a minor is the victim shall be sentenced to life imprisonment if the person has a prior sex conviction in which a minor was the victim, unless the sentence of death is imposed.

Johnson qualified as a repeat sex offender against minors on the basis of convictions in 1989 for second degree rape, second degree sodomy and sexual abuse offenses for victimizing two children under the age of twelve. Mr. Johnson preserved Fifth, Sixth and Eighth Amendment objections to the invocation of the recidivist statutes. The district court sentenced Mr. Johnson to concurrent terms of life imprisonment.

## II

## DISCUSSION

### A.

Mr. Johnson submits on appeal that his consent to the search of his bedroom area and computer was involuntary and, therefore, that his motion to suppress evidence should have been granted.[5] We review a district court's ruling on a motion to suppress de novo. However, we review the district court's factual findings for clear error. *United States v. Lawshea*, 461 F.3d 857, 859 (7th Cir. 2006). Because the voluntariness of a defendant's consent to search is a factual determination, we review a district court's resolution of this question for clear error. *United States v. Raibley*, 243 F.3d 1069, 1076 (7th Cir. 2001).

The Fourth Amendment's prohibition against warrantless searches does not apply when the defendant consents

---

[5] Mr. Johnson does not appeal the district court's denial of his motion to suppress statements to law enforcement officials. He recognizes that he selectively waived his *Miranda* rights, *see United States v. Amaro*, 816 F.2d 284, 286 (7th Cir. 1987), and that suppression of his statements would have left the Government's case largely unchanged. *See* Appellant's Br. at 11.

voluntarily to the search. *United States v. Sandoval-Vasquez*, 435 F.3d 739, 744 (7th Cir. 2006). The Government bears the burden of proving that consent freely and voluntarily was given. *Id.* Whether a defendant voluntarily consented to a search is a factual assessment which turns on the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). We must keep in mind that "a determination of voluntariness does not ride on the presence or absence of a single controlling factor." *United States v. LaGrone*, 43 F.3d 332, 334 (7th Cir. 1994) (internal citations and quotation marks omitted). Rather, we must undertake a "careful scrutiny of all the surrounding circumstances." *Id.* (citing *Schneckloth*, 412 U.S. at 226). Among the factors we consider are: "(1) the person's age, intelligence, and education, (2) whether he was advised of his constitutional rights, (3) how long he was detained before he gave his consent, (4) whether his consent was immediate, or was prompted by repeated requests by the authorities, (5) whether any physical coercion was used, and (6) whether the individual was in police custody when he gave his consent." *Sandoval-Vasquez*, 435 F.3d at 744.

Mr. Johnson contends that his consent was given involuntarily because of two occurrences in the course of the police requests for consent: (1) Agent Rothrock requested more than once that Mr. Johnson consent to a search; (2) Agent Rothrock said that he would need to secure the residence until the warrant issued, thereby causing his free will to be overborne. Mr. Johnson was concerned that the other residents of the home would be unable freely to come and go. We shall examine each of these contentions.

With respect to Mr. Johnson's first submission, our opinion in *United States v. LaGrone*, 43 F.3d 332, 333 (7th Cir. 1994), is helpful. In *LaGrone*, as in this case, the defen-

dant was asked more than once whether he would consent to a search. We stated that "[w]hile it is true that the officers asked LaGrone more than once whether he would consent to the search, we do not believe this constitutes the sort of repetitive psychological harassment that should tip the balance in favor of LaGrone." *Id.* at 334. Here, Agent Rothrock asked Mr. Johnson to consent on more than one occasion. However, Mr. Johnson himself stated that at no time did he feel threatened or coerced.

With respect to the second submission, in *United States v. Santiago*, 428 F.3d 699, 705 (7th Cir. 2005), we determined that a defendant had consented freely and voluntarily to a search despite his claim that officers had threatened to arrest his fiancée and to have their children taken into protective custody. The district court, however, concluded that no actual threat had been issued. Rather, the district court determined that, when his home address had been discovered and he realized that a search of his home was therefore likely, Santiago became "rightful[ly] concern[ed]" for his family. *Id.* The district court further found that this "rightful concern" did not amount to "psychological pressure." *Id.* In reaching this conclusion, the district court found it important that the authorities had behaved professionally, that the entire incident took only twenty minutes and that the encounter was "devoid of any badgering or harassment." *Id.* Looking to the totality of the circumstances considered by the district court, we concluded, in *Santiago*, that the district court's voluntariness finding was not clearly erroneous. *Id.* Similarly, we must conclude that Mr. Johnson's concern that he might inconvenience the other residents of the home was a "rightful concern," but not one that caused "psychological pressure."

Mr. Johnson is 48 years of age and of at least average intelligence. He testified at the suppression hearing that he understood the consent form, that he never felt coerced or threatened and that he understood he was waiving his Fourth Amendment rights. The interview was calm and professional at all times. Considering the totality of the factors surrounding Mr. Johnson's consent, we certainly cannot say the district court clearly erred in finding that consent was voluntarily and freely given.

## B.

Even if Mr. Johnson did not consent, the evidence would have been otherwise admissible under the inevitable discovery doctrine. *See Nix v. Williams*, 467 U.S. 431, 444 (1984). This doctrine provides that, when the Government can establish by a preponderance of the evidence that the information obtained would have been discovered ultimately or inevitably by lawful means, the deterrence rationale of the exclusionary rule no longer applies and the evidence should be admitted. *Id.* "The prosecution must establish that it had probable cause and prove the existence of a chain of events that would have led to a warrant [] independent of the search." *United States v. Brown*, 328 F.3d 352, 357 (7th Cir. 2003) (internal citations and quotation marks omitted).

The facts of this case clearly demonstrate that probable cause existed for the search. *See Illinois v. Gates*, 462 U.S. 213 (1983) (establishing a totality of the circumstances test by which to determine whether probable cause exists). The officers had acquired detailed information from Jane Doe that Mr. Johnson had taken the photos, that she was the child depicted in the photos and that Mr. Johnson had used

a silver digital camera. She also mentioned that he possessed a black Dell computer. R.53 at 15-16. Indeed, based on this information, Agent Rothrock obtained a warrant for Mr. Johnson's arrest before his encounter with Mr. Johnson. Moreover, before Mr. Johnson consented to the search, he had a conversation with the officers. During the course of that conversation, he stated that he owned a black Dell computer and a silver digital camera. He confirmed that he previously had lived in Indianapolis. This information would more than suffice to establish probable cause upon which to issue a search warrant. Therefore, the deterrence rationale of the exclusionary rule would not apply, and the evidence would be admissible under the inevitable discovery doctrine.

## C.

Mr. Johnson also submits that the district court violated his Fifth and Sixth Amendment rights by imposing the mandatory minimum life sentence, required by 18 U.S.C. § 3559(e) and 18 U.S.C. § 2251(e), because the underlying fact of a prior conviction had not been charged in the indictment or proven beyond a reasonable doubt to a jury.

Mr. Johnson acknowledges that this court is without power to decide this issue in his favor. The governing law of the Supreme Court unequivocally states that the fact of a prior conviction *need not* be found by a jury beyond a reasonable doubt, nor must it be alleged in the indictment. *Almendarez-Torres v. United States*, 523 U.S. 224, 246-47 (1998). *Apprendi v. New Jersey*, 530 U.S. 466 (2000), explicitly preserved *Almendarez-Torres*, *see* 530 U.S. at 490 ("*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory

maximum must be submitted to a jury, and proved beyond a reasonable doubt) (emphasis added), although left open the possibility that future cases might revisit its holding, *see id.* at 489-90. Later cases, including *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Shepard v. United States*, 544 U.S. 13 (2005), each have confirmed *Almendarez-Torres'* continuing vitality. *See United States v. Sachsenmaier*, ___ F.3d ___, 2007 WL 1839282, at *4 (7th Cir. June 28, 2007) (confirming that *Almendarez-Torres* remains the governing law but noting that the defendant had preserved the argument for consideration by the Supreme Court). Therefore, we cannot accept Mr. Johnson's claim that the district court's failure to submit this issue to the jury constitutes reversible error.

## Conclusion

For these reasons, the judgment of the district court is affirmed.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—7-30-07