# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-3505

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

GERALD W. SACHSENMAIER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 04-CR-0058-C-01—**Barbara B. Crabb**, *Chief Judge.*

ARGUED OCTOBER 16, 2006—DECIDED JUNE 28, 2007

Before POSNER, RIPPLE, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Gerald Sachsenmaier was con-
victed after a jury trial of conspiring to distribute cocaine
in violation of 21 U.S.C. § 846 and distributing cocaine
in violation of 21 U.S.C. § 841. For purposes of sentenc-
ing, the district court found that he was a career offender,
and it imposed a sentence of 262 months' imprisonment
(the low end of his advisory guideline range). On appeal,
Sachsenmaier attacks both his conviction and his sen-
tence. With respect to the conviction, he argues that the
district court erred when it denied his motion to suppress
the statements of two witnesses, and he claims that the
evidence was insufficient to support his convictions. His
sentence is flawed, he says, both because the district court

failed properly to apply the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), and because he believes that the fact of a prior conviction should either be admitted or found by a jury beyond a reasonable doubt. We conclude that the district court committed no reversible error when it refused to suppress the witness testimony; that the evidence was sufficient to support the conviction; and that the sentencing arguments are without merit. We therefore affirm.

**I**

This case arose out of drug dealings in Menominee, Wisconsin. It began with the arrest of Lynn Field on May 23, 2003, for delivery of methamphetamine. Field immediately agreed to cooperate with the police, and as part of that cooperation, she telephoned a bar in Menominee called the Den and asked for Lisa Connell. When Connell picked up the telephone, Field asked her whether "Gerry" had anything—referring, as Field later testified, to Sachsenmaier. Field also told Connell that she needed "like a couple gs if possible." This, she explained, meant some cocaine. Field had purchased cocaine from Connell in the past, but she had never bought anything directly from Sachsenmaier.

After calling Connell, Field called Calli Schutts, in order to obtain some cocaine. Schutts had been at the Den earlier with Sachsenmaier, but the two had left and gone to Schutts's house to use drugs. Other people, including Kim Larrabee, were also there. That evening, Larrabee bought $200 worth of cocaine from Sachsenmaier on credit; the next day, she gave the money to Schutts, but Schutts did not turn it over to Sachsenmaier. At the time that Field called Schutts, Sachsenmaier was hoping to furnish the cocaine that Field wanted. He was unable to find any, however, and so he arranged for Field to buy her drugs from Brian LaRose.

A few days later, Schutts was arrested and she also agreed to cooperate with the police. She was able to record one conversation with Connell, in which they discussed "Gerry" (whom they also called "Sax") and the money Larrabee had given Schutts for the cocaine. Schutts cooperated in recording other conversations as well, most of them about the drug debt, but one in which she and Gerry arranged for Gerry to deliver her an "eight ball." In the meantime, Sachsenmaier was also talking to undercover officer Vern Vandeberg, who was assigned to the West Central Drug Task Force. At one point, Sachsenmaier told Vandeberg that he could deal $5,000 worth of cocaine every two weeks. Sachsenmaier was eventually arrested.

## II

On February 10, 2005, the government unsealed a two-count indictment against Sachsenmaier in the district court for the Western District of Wisconsin. On April 15, 2005, Sachsenmaier moved to suppress statements made by Larrabee and Connell to Sergeant Russell Cragin, the lead investigator on the case from the local sheriff's department. He asserted that Sergeant Cragin had coerced their statements and thus that it would violate his due process right to a fair trial if those statements were used. The magistrate judge held an evidentiary hearing and recommended that the motion be denied; the district court agreed and issued the appropriate order on June 1, 2005. On June 6, the trial began before a jury, which found Sachsenmaier guilty of both charges. He was sentenced on August 17, 2005. Because he was a career offender, his total offense level was 34 and his criminal history category was VI, which yielded an advisory guidelines range of 262-327 months. The district court decided that a sentence at the bottom of that range

was reasonable and imposed a sentence of 262 months. This appeal followed.

## III

### A

We consider first Sachsenmaier's challenge to the district court's ruling on his motion to suppress the statements that Larrabee and Connell made to Sergeant Cragin. Our review of the question whether a confession is voluntary is *de novo*, although we defer to findings of historical fact. *United States v. Brooks*, 125 F.3d 484, 492 (7th Cir. 1997). This standard is normally applied to the defendant's own statements, but we see no reason why it cannot also be applied to the statements of co-conspirators like Larrabee and Connell.

The first problem Sachsenmaier faces is that he failed to object to the report and recommendation of the magistrate judge. As the government points out in its appellate brief, this omission means that he has waived the right to appellate review of this point. *United States v. Hall*, 462 F.3d 684, 688 (7th Cir. 2006) ("[T]he failure to object to the recommendations and decisions of a magistrate judge is one instance [in which] we have held [that] waiver of appellate review results."). It would not help Sachsenmaier even if we were to treat this as a forfeiture, because it is apparent on this record that Sachsenmaier was not prejudiced by the court's ruling. The government never used the contested statements at trial: neither Larrabee nor Connell testified, and when Sergeant Cragin testified he made no reference to his conversations with either woman. We therefore need not decide whether the statements were coerced. If, as we strongly doubt, there was any error in the district court's pretrial ruling, it was harmless and thus not a ground for reversal. See

*Arizona v. Fulminante*, 499 U.S. 279, 295 (1991) (holding that harmless-error analysis applies to coerced confessions).

B

Sachsenmaier next contends that the evidence was insufficient to support his convictions. Here too, it is not clear whether he properly preserved his argument. The defense moved for a judgment of acquittal under FED. R. CRIM. P. 29(a) at the close of the government's case, claiming that the government had failed to meet its burden of proof. Immediately after the court denied the motion, the defense rested without presenting any evidence. Sachsenmaier neither renewed this motion after the jury returned its verdict, nor did he make a motion for a new trial under FED. R. CRIM. P. 33. The government argues that these omissions mean that we must review his challenge to the sufficiency of the evidence under the demanding plain error standard, rather than under the (almost equally) demanding standard of *Jackson v. Virginia*, 443 U.S. 307 (1979), under which "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. In this case, the outcome does not depend on which standard of review we use, and so we save for another day the question whether renewal of the motion for acquittal when the defendant presents absolutely nothing before the case reaches the jury is necessary. See, *e.g., United States v. DeLeon*, 247 F.3d 593, 596 n.1 (5th Cir. 2001).

With respect to the conspiracy conviction, Sachsenmaier insists that the evidence does not demonstrate any agreement between him and any other person to possess or

distribute cocaine. For the distribution conviction, he argues that the evidence shows only that other people distributed cocaine on various dates. While it was possible that a trier of fact might have agreed with him, it was equally permissible on this record for the jury to find the necessary agreement and distribution.

Turning first to the conspiracy conviction, we conclude that there is enough evidence in the record to support the jury's finding that Connell and Sachsenmaier knowingly collaborated to sell drugs on numerous occasions. The evidence showed that Connell was far more than someone who answered the telephone and helped people get in touch with the "socially elusive" Sachsenmaier. Connell took drug orders, arranged sales, collected drug money, and acted as an intermediary between Sachsenmaier and at least two different buyers. The recorded conversations bear this out, especially the one between Fields and Connell. Fields asked directly whether "Gerry" had anything to sell, and Connell helped set up a drug transaction between Sachsenmaier and Fields. Fields testified that she attempted to buy cocaine from Sachsenmaier on numerous occasions, at least once successfully, and that she always conducted the deals through Connell. In addition, the evidence revealed that Sachsenmaier worked with Schutts. Schutts was responsible for collecting money from a buyer and giving it to Connell, for Sachsenmaier. This evidence, which we rehearse by way of example only (there is more in the record), was enough to permit the jury to find that Sachsenmaier agreed with others to distribute his cocaine. See, *e.g.*, *United States v. Rock*, 370 F.3d 712, 715 (7th Cir. 2004) ("Case law is clear that when defendants are on the same side of a sale of drugs to a third party, there is sufficient evidence of a conspiracy.") (citing *United States v. Herrera*, 54 F.3d 348, 353-54 (7th Cir. 1995)). The fact that neither Connell nor Sachsenmaier testified makes no difference, as the jury

was entitled to find the necessary agreement from circumstantial evidence. *United States v. Hickok*, 77 F.3d 992, 1005 (7th Cir. 1996).

Sachsenmaier's challenge to the distribution charge fares no better. He focuses only on the sufficiency of the evidence that shows that he actually "delivered" cocaine to anyone. The definition of "delivery" in the statute is "the actual, constructive, or attempted transfer of a controlled substance . . . ." 21 U.S.C. § 802(8). The testimony of Schutts is enough, in itself, to allow a rational jury to infer that Sachsenmaier delivered drugs to Larrabee. Schutts testified that she was present when he arranged the cocaine deal with Larrabee. She also testified that although she did not see Sachsenmaier physically hand the drugs to Larrabee, she watched as Larrabee consumed drugs from a table where Sachsenmaier (among others) had "laid out" his drugs. Finally, she heard Sachsenmaier give Larrabee instructions on how he wanted to be paid for the drugs. Sachsenmaier points out that Larrabee might have picked up someone else's cocaine from the table and ingested it, but this possibility is not enough to preclude the jury from drawing the natural inference that Larrabee bought her cocaine from Sachsenmaier and was then arranging to pay for it.

## C

Last, we come to Sachsenmaier's sentencing arguments. He complains that this circuit erred in *United States v. Mykytiuk*, 415 F.3d 606 (7th Cir. 2005), when it adopted for purposes of appellate review a rebuttable presumption that a district court's selection of a sentence within the advisory guidelines range is reasonable. Next, he argues that, *Mykytiuk* or not, his 262-month sentence is an unreasonable one in light of 18 U.S.C. § 3553(a). Finally, he raises the argument that it was plain error to

enhance his sentence based on prior convictions that had not been proven to a jury beyond a reasonable doubt or admitted by him. We have nothing to say on the prior conviction argument, which is squarely foreclosed by *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), and this court's many decisions holding that *Almendarez-Torres* is still good law after *Booker*. See, *e.g.*, *United States v. Wilburn*, 473 F.3d 742, 745-46 (7th Cir. 2007); *United States v. Williams*, 410 F.3d 397, 402 (7th Cir. 2005). We confirm, however, that Sachsenmaier has preserved this argument, should he wish to present it to the Supreme Court.

As for *Mykytiuk*, the Supreme Court has now expressly endorsed the rebuttable presumption of reasonableness for appellate review of a district court's sentencing decision. See *Rita v. United States*, No. 06-5754, 2007 WL 1772146 (June 21, 2007); *United States v. Nitch*, 477 F.3d 933, 937-38 (7th Cir. 2007); *United States v. Gama-Gonzalez*, 469 F.3d 1109 (7th Cir. 2006). The *Rita* decision emphasized that this is a standard for appellate review only. *Rita*, 2007 WL 1772146, at *9. The district courts must calculate the advisory sentencing guideline range accurately, so that they can derive whatever insight the guidelines have to offer, but ultimately they must sentence based on 18 U.S.C. § 3553(a) without any thumb on the scale favoring a guideline sentence. If, however, a district court freely decides that the guidelines suggest a reasonable sentence, then on appellate review the defendant must explain why the district court was wrong.

Conducting our own review of the reasonableness of Sachsenmaier's sentence, as he asks us to do, we conclude that this sentence was a reasonable one. The district court considered the guidelines as well as the factors spelled out in § 3553(a). She looked at letters from people who think that Sachsenmaier is "a terrific person," and she acknowl-

edged that he had a serious cocaine problem. On the other hand, she referred to his extensive history of seemingly incorrigible drug dealing. She was particularly disturbed by the fact that he had involved his son in his drug activities. In the end, the judge said that the sentence she chose "is sufficient to reflect the seriousness of your long-term criminal conduct and protect the community from further criminality on your part."

As we have said before, "[T]he role of this court is not to choose between possible sentences, but rather to review the reasonableness of the sentence imposed by the district court." *United States v. Lopez*, 430 F.3d 854, 857 (7th Cir. 2005). We have done so here, and we conclude that the sentence of 262 months is a reasonable and permissible one for Sachsenmaier.

We therefore AFFIRM the judgment of the district court.

A true Copy:

      Teste:

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—6-28-07