In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-1494

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JERRY STRAHAN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 05 CR 30027—**David R. Herndon**, *Chief Judge.*

ARGUED APRIL 15, 2008—DECIDED MAY 15, 2009

Before CUDAHY, KANNE, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Jerry Strahan was convicted by a jury of conspiracy to distribute cocaine base and distribution of cocaine base and was sentenced to life in prison, the mandatory sentence based on his two prior felony drug convictions. *See* 21 U.S.C. § 841(b). Strahan appeals his convictions and sentence, arguing that the district court should have instructed the jury on his public-authority defense. He also challenges the sufficiency of the evidence against him and the constitutionality of the

mandatory life term under the Sixth and Eighth Amendments.

We affirm. The evidence was insufficient to support a public-authority defense and easily sufficient to support the jury's verdict of guilty on both counts. Strahan's constitutional challenges to his sentence run contrary to Supreme Court caselaw. A mandatory-minimum sentence based on judge-found facts regarding prior felony drug convictions does not violate the Sixth Amendment, and a life term based on recidivism is not cruel and unusual punishment in violation of the Eighth Amendment.

## I. Background

Jerry Strahan delivered drugs for Johnny McCray Jr., who ran a drug-distribution operation out of a house on College Street in East St. Louis, Illinois. McCray Jr. sold mainly heroin and crack cocaine, and employed at least three others to help serve his customers: his father, Johnny McCray Sr.; Mitchell Brown; and Strahan. All three were drug users, and McCray Jr. paid them for their work in both drugs and money.

Strahan had been involved with this group as far back as 1996, when he was caught trying to buy drugs from a drug house run by the McCrays and Eugene Falls, a coconspirator. He was making drug deliveries for the group in 1999 when he was arrested again. This time he cooperated with the government. It was this prior association that led Deputy U.S. Marshal Tom Woods to

ask Strahan in 2003 if he knew the whereabouts of McCray Sr. or Cortez McCray (Johnny McCray Sr.'s other son). Both were wanted on arrest warrants. Strahan later contacted Deputy Woods with information that led to the arrest of both McCrays, and he was put on Woods's payroll as a confidential informant.

The activity at the College Street residence soon drew the attention of other law-enforcement officials. Officer Brian Gimpel of the O'Fallon Police Department, who was deputized to the FBI, was approached by Richard Baker, a confidential informant, with information about the McCray drug operation on College Street. Officer Gimpel specialized in controlled purchases of narcotics and arranged for Baker to buy crack cocaine from Falls at the College Street house. Gimpel also used Joe Mitchell, another informant, to make multiple controlled drug buys at the College Street house. Each transaction was recorded using a device worn by Baker or Mitchell. On the strength of these recordings, Officer Gimpel obtained a search warrant for the McCray drug house.

Based on the evidence collected in the search, a grand jury returned an indictment charging both McCrays, Brown, Falls, and Strahan with conspiracy to distribute crack cocaine and heroin in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Strahan was also charged with violating 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) by distributing cocaine base on September 29, 2004. Because Strahan had two prior state convictions for delivery of controlled substances, the government filed

notice pursuant to 21 U.S.C. § 851 that it would seek enhanced punishment under 21 U.S.C. § 841(b). All of the coconspirators, save Strahan, pleaded guilty to the charges, and the coconspirators agreed to testify against Strahan.

In advance of trial, Strahan gave notice pursuant to Rule 12.3 of the *Federal Rules of Criminal Procedure* that he intended to offer a "public authority" defense based on his interactions with Deputy Woods. In response the government denied that Strahan was acting pursuant to public authority when he committed the charged acts and notified Strahan and the district court that it would call Deputy Woods to testify in opposition to Strahan's public-authority defense.

At trial Deputy Woods testified that he "does not do controlled [drug] buys" and that his contact with Strahan was limited to obtaining information about the where-abouts of persons for whom there were active arrest warrants. Strahan took the stand and testified in his own defense; he admitted being a drug user but denied any involvement in the McCray drug conspiracy operated out of the College Street house. He said he knew Deputy Woods but denied giving him information about drug dealing at the College Street house. In response to a question about whether he thought he had authority to engage in the drug-trafficking activity alleged against him because Woods told him so, Strahan responded, "No, that's not correct, I wasn't doing what is alleged in this case."

At the close of evidence, Strahan asked the district court to issue a public-authority instruction to the jury, arguing

that he believed he was authorized by Deputy Woods to sell narcotics. The court refused to do so. The judge noted Strahan's own testimony flatly denying any involvement in drug dealing and the complete lack of evidence that Woods ever led Strahan to believe he could distribute drugs as part of his role gathering information on the whereabouts of fugitives. The jury found Strahan guilty of both counts.

Because of Strahan's previous drug convictions, he was classified as a career offender under the sentencing guidelines, pushing his offense level to 37 and his criminal history category to VI. That yielded an advisory guidelines range of 360 months to life in prison for both counts. But because of Strahan's two previous convictions for state drug felonies, the statutory minimum for the conspiracy count was life in prison. 21 U.S.C. § 841(b). The court imposed a sentence of life on the conspiracy count and a concurrent 360 months on the crack-distribution count. Strahan appealed, challenging both his convictions and sentence.

## II. Discussion

### A. Public-Authority Defense

At the close of the evidence, Strahan requested a jury instruction on the public-authority defense, arguing that if the jurors disbelieved his testimony that he did not take part in the conspiracy, he was entitled to defend on the basis that his actions were the result of a reasonable belief that he was authorized by Deputy Woods to sell

narcotics in connection with his work as a confidential informant. The district court declined to give the requested instruction, finding that the public-authority defense was not supported by the evidence.

Our review of a district court's refusal to give a theory-of-defense jury instruction is de novo. *United States v. Van Allen*, 524 F.3d 814, 832 (7th Cir. 2008). A criminal defendant is entitled to such an instruction only if there is evidentiary support for it. *Id.*; *see also United States v. Millet*, 510 F.3d 668, 675 (7th Cir. 2007).

The public-authority defense is closely related to another affirmative defense, entrapment by estoppel. *United States v. Baker*, 438 F.3d 749, 753 (7th Cir. 2006) (noting that "[t]he elements that comprise the two defenses are quite similar"); *see also United States v. Neville*, 82 F.3d 750, 761 (7th Cir. 1996) (noting that " 'public authority' [is] sometimes called 'entrapment by estoppel' "). We have recently clarified the distinction between the two defenses: "[I]n the case of the public authority defense, the defendant engages in conduct at the request of a government official that the defendant knows to be otherwise illegal, while in the case of entrapment by estoppel, because of the statements of an official, the defendant believes that his conduct constitutes no of-fense." *United States v. Jumah*, 493 F.3d 868, 874 n.4 (7th Cir. 2007) (citing 53 AM. JUR. PROOF OF FACTS 3D 249 *Proof of Defense of Entrapment by Estoppel* § 20 (1999)). In other words, the public-authority defense requires reasonable reliance by a defendant on a public official's directive to engage in behavior that the defendant knows to be

illegal. *Id.*; *see also United States v. Cao*, 471 F.3d 1, 4 (1st Cir. 2006). In contrast, a defendant who believed his conduct legal because of an official's statement of the law may assert an entrapment-by-estoppel defense. *Jumah*, 493 F.3d at 874 n.4; *see also United States v. Apperson*, 441 F.3d 1162, 1204 (10th Cir. 2006). Strahan's situation is the former; he maintains that he was entitled to argue that he engaged in illegal drug trafficking at the behest of Deputy Woods, not that he relied on Woods's statement that such conduct was actually lawful.

Here, the district court's refusal to instruct the jury on the public-authority defense was manifestly correct. No witness—not even Strahan—testified that Deputy Woods ever instructed or authorized Strahan to distribute crack cocaine. It is true that Woods used Strahan as a confidential informant, but their interaction was limited to Strahan helping Woods find fugitives. Indeed, Deputy Woods testified that he "didn't do controlled buys." Strahan's own testimony eliminated any possibility of a public-authority defense. When asked by the prosecutor if Deputy Woods had ever authorized him to sell drugs as part of his interaction with Woods as an informant, Strahan responded, "He never said I could sell drugs, no." He later added that he had never asked Woods for permission to do so either. Strahan was plainly not entitled to a public-authority instruction; the defense was utterly unsupported by the evidence.

## B. Sufficiency of the Evidence

Strahan also argues that the evidence was insufficient to convict him on either count. We will overturn the verdict

on this basis only if, viewing the evidence in the light most favorable to the government, there is " 'no evidence, no matter how the evidence is weighed, from which the jury could have found guilt beyond a reasonable doubt.' " *United States v. Burke*, 425 F.3d 400, 415 (7th Cir. 2005) (quoting *United States v. Albarran*, 233 F.3d 972, 975 (7th Cir. 2000)).

The record is overflowing with evidence of Strahan's guilt. Johnny McCray Jr. testified that Strahan helped him sell drugs from the College Street house in late 2003 and through most of 2004. According to McCray Jr., Strahan was responsible for answering a prepaid cell phone used to take drug orders and would also deliver drugs when necessary. He also testified about a letter sent to him from jail by his father, Johnny McCray Sr., in December 2004. In the letter McCray Sr. asked if Strahan had been using some of the drugs he was supposed to sell. (The answer was "yes.")

Johnny McCray Sr. testified that Strahan lived with the McCrays and sold drugs for the McCray Jr. crack cocaine and heroin distribution group, initially in Granite City, Illinois, and later from the College Street house in East St. Louis. Coconspirators Falls and Brown also testified that Strahan lived at McCray Jr.'s College Street house and participated in the drug-distribution operation conducted there by (among other things) taking phone orders and delivering drugs. This evidence is more than sufficient for the jury to convict Strahan on the conspiracy count. *See United States v. Sachsenmaier*, 491 F.3d 680, 684 (7th Cir. 2007) (finding a conspiracy where the defendant "took drug orders, arranged sales, collected drug money,

and acted as an intermediary" between the seller and his customers).

Similarly, the testimony at trial gave the jury sufficient evidence to find Strahan guilty of distributing crack cocaine to informant Joe Mitchell on September 29, 2004. The transaction was recorded, and although Strahan disputed the accuracy of the audio recording, he admitted being present when Mitchell received the drugs at the College Street address on that day. McCray Jr. testified that one of the voices on the recording was Strahan's and that Strahan gave Mitchell the drugs, collected payment, and brought the money to him for change. Mitchell testified and confirmed the details of the September 29 controlled buy and Strahan's role in the transaction. Notwithstanding the poor quality of the audio recording, McCray and Mitchell were able to identify Strahan's voice, and both testified in detail to Strahan's participation. This evidence amply supports the guilty verdict on the crack-distribution count.

## C. Sentencing Claims

Strahan raises two constitutional challenges to his sentence. First, he argues that the mandatory-minimum sentence of life imprisonment runs afoul of the Sixth Amendment by allowing facts not proven to a jury beyond a reasonable doubt—in this case, his two prior convictions for drug felonies—to affect the severity of his punishment. *See* 21 U.S.C. § 841(b)(1)(A). But this argument is foreclosed by *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), and *Harris v. United States*, 536

U.S. 545 (2002). Strahan acknowledges that we have repeatedly rejected the argument that *United States v. Booker*, 543 U.S. 220 (2005), has called into question either *Almendarez-Torres* or *Harris*. *See, e.g.*, *Sachsenmaier*, 491 F.3d at 685 (noting "this court's many decisions holding that *Almendarez-Torres* is still good law after *Booker*"); *United States v. Jones*, 418 F.3d 726, 732 (7th Cir. 2005) (finding that "[t]he distinction drawn by the Court in *Harris* appears to have survived" *Booker*). He seeks only to preserve these issues for review in the Supreme Court, and we confirm that he has done so. *Sachsenmaier*, 491 F.3d at 685.

Next, Strahan contends that the mandatory-minimum sentence of life in prison violates the Eighth Amendment's prohibition on cruel and unusual punishment because the sentence is grossly disproportionate. But the Supreme Court has rejected Eighth Amendment challenges to statutorily mandated life sentences for defendants with two prior felony convictions, *see Ewing v. California*, 538 U.S. 11, 25 (2003) (upholding California's "three-strikes" law); *Lockyer v. Andrade*, 538 U.S. 63 (2003), and we have followed suit, *see United States v. Cannon*, 429 F.3d 1158, 1161 (7th Cir. 2005). Accordingly, Strahan's life sentence does not violate the Eighth Amendment.

Strahan makes a host of other sentencing arguments—most notably, that the district court should not have applied a guidelines enhancement for obstruction of justice, U.S.S.G. § 3C1.1 & cmt. n.4(b), based on his trial testimony—but we need not address them. Based on his two prior convictions for felony drug offenses, Strahan was subject to the statutory-minimum sentence of life in

prison on the conspiracy count, and that sentence trumped any guidelines calculation. *Id.* § 5G1.1(b). His concurrent sentence of 360 months on the crack-distribution count was also unaffected by any of his other claims of error. Strahan was deemed a career offender under the guidelines because of two prior state convictions, pushing his base offense level to a minimum of 37 and rendering other enhancements meaningless. *Id.* § 4B1.1(a)-(b).

Strahan submitted a pro se brief after his counsel filed his opening brief. We agreed to accept the supplemental brief only after Strahan specified the arguments he intended to advance. We therefore confine our review to the arguments raised in his motion. These are: (1) that he did not act in furtherance of the alleged conspiracy; and (2) one of the two convictions listed in the § 851 notice was disregarded by the district court for purposes of the guidelines calculation. The first argument fails along with the sufficiency-of-the-evidence argument, which we have rejected for the reasons noted above. Strahan appears to contend that his actions were aimed at thwarting what he sees as two separate conspiracies—one involving Falls and Baker, the other involving the McCrays—but the testimony at trial was to the contrary, and that evidence was easily sufficient to sustain his convictions.

Finally, Strahan notes that the district court disregarded one of his prior drug convictions listed in the § 851 notice because it was not clear from the charging document whether it would have counted as a "controlled sub-

stance offense" for purposes of U.S.S.G. § 4B1.1(a)(2) and .2(b). He contends that this invalidates his life sentence. But Strahan conflates two separate standards. *Damerville v. United States*, 197 F.3d 287 (7th Cir. 1999). The district court did not disregard this conviction for purposes of the § 851 notice, required for application of the statutory-minimum life sentence. Instead, the court declined to rely on the record of conviction for one of Strahan's prior drug convictions in calculating his guidelines sentence because the record was unclear whether it met the guidelines definition of a "controlled substance offense." In contrast, the mandatory life sentence applies when a defendant convicted under § 841(a) has two or more prior "felony drug offense[s]." 21 U.S.C. § 841(b)(1)(A). There is no dispute that the two state narcotics convictions identified in the government's § 851 notice met this standard.

AFFIRMED.