**UNITED STATES of America,**
**Plaintiff,**

v.

**Jonathan HUGHES, Defendant.**

**Case No. 10–CR–62.**

United States District Court,
E.D. Wisconsin.

Sept. 22, 2010.

Thomas G. Wilmouth, Federal Defender Services of Wisconsin Inc., Milwaukee, WI, for Defendant.

### SENTENCING MEMORANDUM

LYNN ADELMAN, District Judge.

The sentencing guideline for misprision of a felony sets the base offense level 9 levels lower than the offense level for the underlying offense (i.e., the offense the defendant helped conceal), but in no event less than 4 nor more than 19. U.S.S.G. § 2X4.1(a).[1] The application notes explain

---

1. The misprision statute provides: "Whoever, having knowledge of the actual commission of

that normally no further adjustment for minor or minimal role under U.S.S.G. § 3B1.2 would apply because an adjustment for reduced culpability is incorporated in the base offense level. U.S.S.G. § 2X4.1 cmt. n. 2; *see also United States v. Godbolt,* 54 F.3d 232, 234 (5th Cir.1995). The instant case presented the issue of how to determine the sentence for a misprision defendant who helped conceal his father's heroin distribution activities in very minor ways, then suffered revocation of his state supervision based on that conduct.

## I. BACKGROUND

Through the use of confidential informants and other investigative methods, the government learned that John West headed a fairly large-scale heroin trafficking operation in Milwaukee. Following an extensive investigation, which involved numerous controlled buys, agents executed a search warrant at a duplex associated with West's operation. In the upper unit, officers found identifiers for West; his main distributor, William Hunter; and defendant Jonathan Hughes, West's son (hereafter "defendant"). In the lower unit, they found a quantity of heroin.

In post-arrest statements, West and Hunter indicated that defendant sometimes stayed in the duplex but did not sell heroin. Other co-conspirators said essentially the same thing or did not mention defendant at all.

In his post-arrest statement, defendant admitted seeing heroin in the upper unit, and that the extensive traffic there was probably due to dealing. Defendant agreed to plead guilty to misprision of a felony, acknowledging that he was aware of his father's drug trafficking, took cer-

tain affirmative steps to conceal it, and failed to disclose it to law enforcement. His specific acts included (1) using West's drug money to travel to see his son, (2) alerting West to possible law enforcement monitoring after a person defendant suspected to be an undercover police officer took photos of defendant and his car, and (3) alerting West of a law enforcement contact at defendant's mother's residence, which West frequented.

## II. DISCUSSION

The district court follows a two-step procedure in imposing sentence. First, the court calculates the defendant's advisory sentencing guideline range. Second, the court determines the actual sentence under all of the factors set forth in 18 U.S.C. § 3553(a). *See United States v. Panice,* 598 F.3d 426, 441 (7th Cir.2010); *United States v. Bush,* 523 F.3d 727, 729 (7th Cir.2008).

### A. Guidelines

The parties agreed, for purposes of determining the offense level applicable to the underlying offense, to a relevant conduct drug weight of 80 to 100 grams of heroin, which produced a base level of 24 under U.S.S.G. § 2D1.1(c). Following the 9 level reduction under § 2X4.1 and a 2 level reduction for acceptance of responsibility under § 3E1.1, I adopted a final offense level of 13. Coupled with defendant's criminal history category of V, level 13 produced an imprisonment range of 30–37 months. Because misprision carries a 3 year statutory maximum, the range at the high end was capped at 36 months. *See* U.S.S.G. § 5G1.1.

a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both." 18 U.S.C. § 4.

## B. Section 3553(a)

### 1. Sentencing Factors

Section 3553(a) directs the court, in determining the particular sentence to be imposed, to consider the following factors:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the [advisory] sentencing [guideline] range[;]

(5) any pertinent policy statement ... issued by the Sentencing Commission[;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). After considering these factors, the district court must impose a sentence "sufficient, but not greater than necessary" to comply with the purposes of sentencing set forth in the statute—punishment, deterrence, public protection, and rehabilitation. 18 U.S.C. § 3553(a).

■■■ While the court must give respectful consideration to the guidelines' recommendation in imposing sentence, it may not presume that a guideline sentence is appropriate. *See, e.g., Nelson v. United States,* —— U.S. ——, 129 S.Ct. 890, 892, 172 L.Ed.2d 719 (2009); *United States v.*

*Sachsenmaier,* 491 F.3d 680, 685 (7th Cir. 2007). Rather, the court must make an independent determination, taking into account the types of sentences available, the relevant § 3553(a) factors, and the arguments of the parties. *See Gall v. United States,* 552 U.S. 38, 49–50, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). The court is free to assign different or greater weight to factors covered by the guidelines, *see, e.g., United States v. Wachowiak,* 496 F.3d 744, 753 (7th Cir.2007), or to reject any guideline on policy grounds, *see, e.g., United States v. Pape,* 601 F.3d 743, 749 (7th Cir.2010); *United States v. Corner,* 598 F.3d 411, 414–15 (7th Cir.2010) (en banc), so long as it acts reasonably and consistent with the § 3553(a) factors, *see, e.g., United States v. Castro–Juarez,* 425 F.3d 430, 436 (7th Cir.2005).

### 2. Analysis

#### a. The Offense

■■■ As discussed above, defendant, aware that his father trafficked heroin out of the duplex where he occasionally stayed, on two occasions alerted his father to possible law enforcement surveillance. The record contained no credible evidence that defendant personally trafficked heroin or participated in any way in such transactions. Nor, aside from his use of West's drug money on one occasion to visit his son, did the record show that defendant profited from his father's activities. Defendant explained that after a period of estrangement—and with his mother's encouragement—he sought to rekindle his relationship with his father, leading to his limited involvement in the instant offense. He stated that he planned to avoid his father in the future and perhaps leave the state to start over.

#### b. The Defendant

At age twenty-eight, defendant had a fairly substantial prior record: cocaine

possession in 2000; disorderly conduct twice in 2000; second degree recklessly endangering safety in 2002, for which he served 3 years in prison; and felon in possession and carrying a concealed weapon in 2006, for which he served 18 months in prison initially. The State of Wisconsin revoked his extended supervision in the 2006 case based on the instant offense conduct, and he was at the time of sentencing here serving a 14 month revocation term. I accepted that defendant's involvement in the instant offense may have stemmed from his trying to have a relationship with his father, but his record suggested that he was able to get into trouble on his own.

Defendant's mother stated that defendant was doing well before his arrest, going to church, working with young people in the community, and spending more time with his two children. Defendant had a third child on the way with his current girlfriend; she remained supportive and also stated that he was doing well before his arrest in this case.

Defendant admitted past drug use, but he did not appear to have a current problem of any significance. He dropped out of school but later worked on a GED in state prison and compiled a decent work record in the community.

### c. The Sentence

The guidelines called for a term of 30–36 months, but under the circumstances I found a lesser term sufficient to satisfy the purposes of sentencing. First, like other guidelines that attempt to account for a defendant's limited or minor role, U.S.S.G. § 2X4.1 is a rather blunt tool. Setting the level 9 levels lower than that applicable to the underlying felony, but not higher than 19,[2] might appropriately capture a misprision defendant's culpability, or it might not; it depends on what he actually did. Some misprision defendants go to great lengths to conceal the crime, endangering or threatening others in doing so; some profit from their involvement; and some assist in the commission of the underlying offense. Others, like the defendant in the present case, assist in the concealment in relatively minor ways. The record in this case contained no evidence that defendant's conduct was important to the success of the scheme or its ability to evade detection. Others acted as look-outs during actual drug deals. Many of the co-conspirators who made statements to law enforcement had little or nothing to say about defendant.

Second, I took into account the fact that defendant did appear to be doing reasonably well before his arrest in this case, following the rules of supervision, testing negative, working at least part of the time. Defendant presented evidence of his involvement in a youth basketball league, as well as letters from friends and family attesting to his good character. I also found it relevant that defendant became involved in this matter based on a desire to renew his relationship with his father.

Third, I found it appropriate to consider the impact of defendant's 2006 firearm possession conviction. In addition to receiving 3 criminal history points for the original sentence in that case, U.S.S.G. § 4A1.1 (a), defendant received 2 more points for being on supervision when he committed the instant offense, U.S.S.G. § 4A1.1(d), plus a 14 month revocation

---

**2.** Although I have found no Commission report or reason for amendment statement explaining the basis for U.S.S.G. § 2X4.1, I assume the Commission set an offense level limit of 19 to correspond to the statutory maximum. (Level 19 in criminal history category I produces a range of 30–37 months.) However, it is unclear why the Commission believed a 9 level downward adjustment, as opposed to some other number, appropriate in these cases.

sentence in that state case, plus a guideline recommendation that I run the entire sentence for the instant offense consecutive, *see* U.S.S.G. § 5G1.3 cmt. n. 3(C). Being on supervision is an aggravating circumstance, but when the guidelines operate in this fashion they can place too much weight on that factor.

Defendant argued that under the circumstances the 14 month state revocation sentence provided sufficient punishment and requested that I place him on probation in this case. He noted that a probationary sentence could run up to 5 years, 18 U.S.C. § 3561(c), while a supervised release term after a prison sentence could last just 1 year, 18 U.S.C. § 3583(b)(3). I found defendant's suggestion insufficient to promote respect for the law and deter, given the number of times he had been in trouble before. Probation did not serve those purposes very well in this case. I also considered defendant's poor track record on supervision. Finally, I saw no significant correctional treatment needs warranting a longer period of supervision.

Rather, I found it appropriate to impose a period of confinement, but run it concurrently with the sentence defendant was serving in recognition of the fact that the revocation was based solely on the instant offense conduct. *See United States v. Huusko*, 275 F.3d 600, 603 (7th Cir.2001). I further found it appropriate to make the sentence "fully concurrent," which required an "adjustment" of the instant sentence. Under all the circumstances, I found a total period of confinement of 17 months sufficient but not greater than necessary, balancing the relatively minor nature of the offense against the seriousness of defendant's record. As defendant had about 7 months in on the state sentence, I adjusted the instant sentence to 10 months, running concurrently with the undischarged portion of the state sentence.

## III. CONCLUSION

I therefore committed defendant to the custody of the Bureau of Prisons for 10 months running concurrent with the balance of his state revocation sentence. Upon release, I directed him to serve 1 year of supervised release to assist in his reintegration into the community. Other terms and conditions of the sentence appear in the judgment.