UNITED STATES of America,
Plaintiff,

v.

CHAO VANG, Defendant.

Case No. 10–CR–31.

United States District Court,
E.D. Wisconsin.

June 6, 2011.

William J. Lipscomb, United States Department of Justice, Office of the U.S. Attorney, Milwaukee, WI, for Plaintiff.

Alexander Flynn, Alex Flynn & Associates SC, Milwaukee, WI, for Defendant.

### SENTENCING MEMORANDUM

LYNN ADELMAN, District Judge.

Defendant Chao Vang pleaded guilty to conspiracy to distribute MDMA, commonly known as ecstasy, 21 U.S.C. § 841(a)(1) & (b)(1)(C), and I ordered a pre-sentence report ("PSR") in anticipation of sentencing. In imposing sentence, the district court must first calculate the defendant's advisory sentencing guideline range, then determine the ultimate sentence under all of the factors set forth in 18 U.S.C. § 3553(a). *See United States v. Panice,* 598 F.3d 426, 441 (7th Cir.2010); *United States v. Bush,* 523 F.3d 727, 729 (7th Cir.2008).

## I. GUIDELINES

Defendant's PSR set a base offense level of 34 based on a drug weight of 30,000 ecstasy pills, U.S.S.G. § 2D1.1(c)(3), then subtracted 3 levels under § 2D1.1(a)(5)(ii) and 2 levels under § 3B1.2(b) based on defendant's minor role, and 3 levels under § 3E1.1 based on his acceptance of responsibility, for a final level of 26. The PSR assessed 1 criminal history point under U.S.S.G. § 4A1.1(c) based on defendant's 2010 drunk driving conviction and 2 points under § 4A1.1(d) because he committed the instant offense while under the drunk driving sentence of 2 years unsupervised probation, for a total of 3 points and a criminal history category of II. Level 26 and category II produce an imprisonment range of 70–87 months. I found these calculations correct and adopted them accordingly.

## II. SECTION 3553(a)

### A. Sentencing Factors

In imposing the ultimate sentence, the district court must consider the factors set forth in 18 U.S.C. § 3553(a):

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the [advisory] sentencing [guideline] range[;]

(5) any pertinent policy statement ... issued by the Sentencing Commission[;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The statute directs the court, on consideration of these factors, to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." *Id.*

■ While the guidelines serve as the starting point and initial benchmark, *Gall v. United States,* 552 U.S. 38, 49, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007), the district court may not presume that a guideline sentence is the correct one, *Nelson v. United States,* 555 U.S. 350, 129 S.Ct. 890, 892, 172 L.Ed.2d 719 (2009). Rather, the court must make an independent determination, without any thumb on the scale favoring a guideline sentence, *United States v. Sachsenmaier,* 491 F.3d 680, 685 (7th Cir.2007), taking into account the types of sentences available, the relevant § 3553(a) factors, and the arguments of the parties, *see Pepper v. United States,* —— U.S. ——, 131 S.Ct. 1229, 1241, 179 L.Ed.2d 196 (2011); *Gall,* 552 U.S. at 49–50, 128 S.Ct. 586.

### B. Analysis

#### 1. The Offense

Defendant's prosecution arose out of the government's investigation into the drug trafficking activities of a gang called the "Menace of Destruction" or the "MOD," which operated in various states, including Minnesota and Wisconsin. Defendant assisted the Twin Cities leader of the MOD, Chieng Vang, in Vang's distribution of ecstasy. Through the monitoring of telephones pursuant to Title–III intercepts, the government learned that defendant fa-

cilitated the MOD drug enterprise by providing a location where drugs were could be stored and by relaying information between Vang and a source of supply. He was not involved in the actual distribution of ecstasy or other controlled substances.

Defendant's specific involvement pertained to a $100,000 shipment of ecstasy from a Colorado source, believed to involve 30,000 pills, as discussed in ¶¶ 70–78 of the PSR. During recorded calls, Chieng Vang spoke of having his source's courier deliver the ecstasy to defendant and his brother's house. Defendant also agreed to relay messages between Chieng Vang and the Colorado source.

In his statement to probation, defendant indicated that he met Chieng Vang when he worked on Vang's car, and they became friends. Defendant stated that he then assisted Vang by relaying messages from the Colorado source. He denied receiving any money for assisting Vang. He accepted the estimate of 30,000 pills but stated that he never really knew how much was involved in this shipment.

### 2. The Defendant

At age twenty-seven, defendant had a minimal prior record: a 1999 juvenile adjudication for criminal mischief, and a 2010 adult conviction for drunk driving, for which he was on supervision when he committed the instant offense. He thus received a total of 3 criminal history points related to this case, on which he was sentenced to unsupervised probation. Otherwise, he would have fallen in criminal history category I and been eligible for the safety valve reduction.

Defendant's parents immigrated to this country from Laos in the early 1980's, and he was born in Colorado in 1983. Defendant's mother died when he was six, but he appeared to have had a good childhood with his father. He moved to Wisconsin at age fifteen to live with his sister, but he continued to have a close relationship with his father.

Defendant married in LaCrosse, Wisconsin in 2001, but separated from his wife in 2007. They had a son, age eight, and shared joint custody, although it appeared that the boy primarily lived with defendant. He owed no back child support and appeared to have a good relationship with his son. Defendant's wife indicated that although they were separated, they maintained a good and civil relationship. She stated that defendant always supported their son and remained helpful to her even after the separation.

Between 2005 and 2009, defendant lived with his father and worked on his father's farm in Oklahoma. Since 2009, he lived in Minnesota, currently with his brother, and he worked as a mechanic. He had the 2010 drunk driving conviction, and admitted smoking marijuana as a teen, but he did not appear to have any current substance abuse problems; all drug screens on pre-trial release were negative. Nor did he appear to have other correctional treatment needs, aside perhaps from completing his GED. He was obviously able to support himself and his son, despite his lack of formal education.

The court received positive letters from defendant's cousin, sisters, father, and pastor, from which it was clear that he enjoyed strong family and community support. Several supporters appeared in court for defendant's sentencing.

### 3. The Sentence

The guidelines recommended 70–87 months, but that was based on defendant's high drug weight, which substantially inflated his range and overstated the seriousness of his offense. Even with the reductions under U.S.S.G. §§ 2D1.1(a)(5) & 3B1.2, the range was greater than necessary to provide just punishment for de-

fendant's specific conduct. The parties agreed that defendant's role was minor and related primarily to a single ecstasy shipment. The record indicated that he did not know how much ecstasy was involved in that shipment, and he did not profit from his association with Chieng Vang. Under these circumstances, the guidelines' weight-driven formula provided limited help in selecting an appropriate, individualized sentence under § 3553(a). *See, e.g., United States v. Cocoa–Vega,* No. 07–CR–323, 2009 WL 1459560, at *3 (E.D.Wis. May 26, 2009); *United States v. Thomas,* 595 F.Supp.2d 949, 952 n. 1 (E.D.Wis.2009); *United States v. Cabrera,* 567 F.Supp.2d 271, 276–77 (D.Mass.2008); *United States v. Fathalla,* No. 07–CR–87, 2008 WL 4501057, at *4 (E.D.Wis. Sept. 29, 2008); *see also Kimbrough v. United States,* 552 U.S. 85, 96, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007) (noting that the drug trafficking guideline was based on the statute's weight-driven scheme rather than empirical data or study).

Given the nature of defendant's specific conduct, I found that a sentence served in the community, with a substantial period of community confinement, sufficed to provide just punishment. Given defendant's limited prior record, compliance with the conditions of pre-trial release, solid history of employment, and strong family support, I also saw no need for prison to protect the public and deter. A probationary sentence sufficed to ensure that defendant was monitored and maintained compliance with the law. A sentence served in the community also allowed defendant to continue supporting and caring for his son. Defendant was the child's primary care-taker, and as his estranged wife discussed in ¶ 148 of the PSR, a period of imprisonment would cause significant stress and difficulty for her and their son.

### III. CONCLUSION

For the foregoing reasons and those stated on the record, I placed defendant on probation for a period of 4 years. This was a substantial term, although less than the statutory maximum, and I found it sufficient but not greater than necessary to ensure monitoring, deterrence, and protection of the public. As I advised defendant at his sentencing hearing, an offender revoked from probation may be sentenced to any term available originally, up to the statutory maximum; thus, probation is not to be taken lightly. *See also Gall,* 552 U.S. at 48, 128 S.Ct. 586 (explaining that while custodial sentences are qualitatively more severe than probationary sentences of equivalent terms, offenders on probation are nonetheless subject to conditions that substantially restrict their liberty).

Based on his financial situation, I determined that defendant lacked the ability to pay a fine; I did, however, require community service in lieu of a fine. As further conditions of supervision, I forbid association or communication with the MOD gang or any other gang, and required defendant to comply with the conditions of home confinement for a period not to exceed 180 consecutive days. Other terms and conditions of the sentence appear in the judgment.